# Duncan *against* M'Cumber.

A writ of *fieri facias* delivered to the sheriff, binds the personal property of the defendant from the time of delivery, whether a levy has been then made or not, as against a subsequent purchaser from the defendant: and the sheriff may seize the goods before the return day, and sell them afterwards to satisfy the judgment.

But if another judgment has been recovered before a justice of the peace against the same defendant, and an execution be delivered to the constable who after the delivery of the former writ to the sheriff, seizes the goods and sells them at public sale, without notice of the former writ, the sheriff cannot afterwards take the goods out of the possession of one who purchased at the constable's sale.

This would be the law if the constable had seized and sold the goods of a testator under a judgment and execution against the defendant as executor, and the judgment and *fieri facias* delivered to the sheriff were also against the defendant as executor.

But if the constable's execution had been on a judgment against the defendant in his own right, the constable could not have taken the goods of the defendant that had belonged to the testator, so long as the sheriff had in his hands an execution against the defendant as executor, which bound the goods.

ERROR to the common pleas of *Erie* county.

This was an action of trespass *de bonis asportatis*, brought by Solomon M'Cumber, the defendant in error, against James Duncan, plaintiff in error. The goods in question were part of the personal estate of Moses Fellows at the time of his decease; and as such were thereupon taken into possession by Rebecca Fellows, his executrix and widow. Upon a judgment obtained against her, as the executrix of Moses Fellows, in favour of James Duncan, the plaintiff in error, in the common pleas of Erie county, a writ of

[Duncan v. M'Cumber.]

*fieri facias* was sued out to May term 1839, directed to the sheriff of Erie county, and delivered to him to be executed on the 27th day of March, 1839, in the borough of Erie: at which place, it seems, that the sheriff, without going to the residence of Rebecca Fellows about fourteen miles from the borough, where the goods then were, endorsed a seizure of them upon the back of the writ, without seeing them, or having them in his power; and without attempting to take the possession of them, until twenty days or more afterwards, when, in the mean while, they had come into the hands and possession of the defendant in error, as a purchaser thereof at constable's sale, made under the following circumstances: On the first of April, 1839, an execution was issued by Thomas Greenwood, a justice of the peace of Erie county, against Rebecca Fellows, in her own right, as it would appear by the execution, at the suit of Ezra Thompson, for 70 dollars and 79 cents, besides costs of suit: also, on the next day, another execution was issued by P. Wells, another justice of the peace of Erie county, against Rebecca Fellows, as executrix of Moses Fellows, deceased, at the suit of Timothy J. Newton, for a debt of 6 dollars and 20 cents, besides 82 cents costs; both of these executions were directed to the constable of Harborcreek township in Erie county, whose name, as it appears, was G. W. Walker; having them in his hands on the 2d day of April, 1839; he, by virtue thereof, actually took the goods from the possession of Rebecca Fellows where he found them, and in the course of ten or twelve days afterwards, sold them public auction to the defendant in error, after giving due notice thereof. The goods, upon the defendant in error's paying for them, were accordingly delivered by the constable to him; from whom the plaintiff in error, in company with the deputy sheriff, afterwards; but before the return-day of the *fieri facias*, took the goods by virtue thereof.

Upon the trial of the cause below, after the evidence was given to the jury, the counsel of the defendant requested the court to charge the jury, 1st, That the execution in favour of James Duncan and against Rebecca Fellows, executrix of Moses Fellows, deceased, bound the personal property of the deceased, from the delivery of the same to the sheriff. 2d, That the levy and sale of the goods by the constable, Walker, upon an execution issued by a justice, and received by the constable after the lien of the *fieri facias* in the sheriff's hands had attached, did not release the goods from the sheriff's levy and lien; and that notwithstanding the action of the constable, the sheriff was justified in taking and selling the goods upon the *fieri facias* in his hands. 3d, That the execution in the constable's hands, being against Rebecca Fellows for her individual debt, the constable could not levy upon and sell the goods late of Moses Fellows, deceased, in her possession as executrix, so as to release them from the previous lien of the *fieri facias*,

X.—T

[Duncan v. M'Cumber.]

in favour of James Duncan against Rebecca Fellows, as the execu-
trix of Moses Fellows, deceased.

The court in their charge to the jury considered the defendant's
first proposition to be correct in general; but denied his second,
unless the purchaser at the constable's sale had full notice of the
sheriff's claim to the goods under the *fieri facias*, and his endorse-
ment thereon of having levied on the same; whether he had such
notice or not, the court left as a question of fact to the jury to be
decided by them. The defendant's third proposition, the court
answered in the negative. The counsel of the defendant below
excepted to the answers and charge of the court on his second and
third propositions; which have been assigned for error.

*Walker* and *Galbreath*, for the plaintiff in error, referred to the
39*th sec. of the act of the* 16*th of June* 1836, *Parke & Johns. Dig.*
575; 2 *Whart. Dig. tit. Execution, pl.* 264, 265, and 266, to show
that the court erred in their charge on the second point; and to 2
*Watts* 110, for a like purpose on the third point.

*Randall*, for defendant in error, cited 5 *Rawle* 290; 3 *Rawle* 343,
406; 6 *Watts* 550; 2 *Johns. Ch. Rep.* 312; 6 *Watts* 400.

The opinion of the court was delivered by

KENNEDY, J.—At common law, in England, the writ of *fieri
facias* bound the defendant's goods from its *teste*, so that a sale of
the goods made thereafter by the defendant, though *bona fide*,
might have been avoided by a seizure of the goods under the writ
at any time before it became returnable. *Anon. Cro. Eliz.* 174;
*Cro. Car.* 149, 181, 440; 1 *Mod.* 188; *Gilb. on Executions* 13, 14.
It was no doubt presumed, when such writ was awarded, that it
would not only be issued, but would be immediately put into the
hands of the sheriff, and be by him executed. This, however, was
not always the case. On the contrary, the notion of the goods being
retrospectively bound from the *teste* of the writ, was frequently
abused by taking out writs of *fieri facias*, one after the other, with-
out ever delivering them to the sheriff, whereby the goods of the
defendants therein named became bound, which consequently made
the sales thereof by the defendants, and all commerce in regard to
them, somewhat uncertain. To prevent this, as Chief Baron Gilbert
observes, *Gilb. on Executions* 14, it was enacted, among other
things, by the statute of frauds, 29 *Car.* 2, *c.* 3, *sect.* 16, " that no
writ of *fieri facias*, or other writ of execution, shall bind the pro-
perty of goods, against whom such writ of execution shall be sued
forth, but from the time that such writ shall be delivered to the
sheriff, under sheriff, or coroners, to be executed; and for the better
manifestation of the said time, the sheriff, under sheriff, and coro-
ners, their deputies and agents, shall, upon the receipt of any such
writ, (without fee for doing the same,) endorse upon the back there-

of, the day of the month, or year, whereon he or they received the same." 1 *Mod.* 188; 1 *Sid.* 271.　But neither before nor since the passage of this statute, is the property of the goods altered by the mere delivery of the writ to the sheriff, but continues, notwithstanding, in the defendant, till the execution thereof.　The meaning of these words, "that the goods shall be bound from the delivery of the writ to the sheriff," is, that after the writ is so delivered, if the defendant makes an assignment of his goods, unless in market overt, the sheriff may take them in execution.　Lathal *v.* Tomkins, 2 *Eq. Ca. Abr.* 381, *pl.* 14; Smallcomb *v.* Cross, 1 *Lord Raym.* 252; *per Holt, C. J.*　This statute, however, only protects goods in the hands of purchasers or strangers, where the goods are sold *bona fide;* for if the party die after the *teste,* but before the delivery of the writ to the sheriff, the goods are bound in the hands of his executors or administrators; for this is not a change of property by sale, or for a valuable consideration; *Comb.* 145; so that in this respect the law is still the same that it was before the statute, which was made for the benefit of strangers, who might have acquired a title to the goods between the *teste* of the writ of execution, and the time of the delivery thereof to the sheriff, and not for the benefit of the party, or his executors or administrators.　*Bac. Abr. tit. Execution* 716, 733; *Gilb. on Executions* 15, 16.　That the principle of the common law of England, in regard to the goods of a defendant, in an execution, being bound thereby from its *teste,* was introduced into and adopted in Pennsylvania, upon its first settlement as a province, is evidenced very clearly by our act of assembly, passed for the prevention of frauds and perjuries, in 1772.　The fourth section of this act is an exact transcript of the sixteenth section of 29 *Car.* 2, *c.* 3, already recited, with the exception of the words " of the person," which appear to have been omitted in the English statute, evidently from oversight.　Had not the rule of the common law of England on this subject been in force here, the passage of our act would have been wholly unnecessary.　But being in force here, and the like evils experienced from it, as were there, it became necessary to apply a similar remedy.　It is evident, therefore, since the writ of *fieri facias* in this case was delivered to the sheriff before the executions were issued, under which the constable took and sold the goods, that they were bound by the *fieri facias,* when the executions came first into the hands of the constable, whether the sheriff had actually then made a seizure of the goods or not: and as against a purchaser from the defendant in the execution, the sheriff would, by virtue of the lien thus acquired, have had a right to seize or take the goods at any time before the return-day of the *fieri facias* had passed by, and to sell them afterwards, for the purpose of satisfying the debt mentioned in the writ.　But whether he had such right, as against a purchaser without notice of the lien under the *fieri facias* from a constable, where the latter took and sold the goods under executions authorizing him to do so, seems to

[Duncan v. M'Cumber.]

present a different question.   Under the statute of 29 *Car.* 2, it has been held, that goods bought at a sale made under an execution, delivered to the sheriff subsequently to the delivery of a prior execution, were protected from the prior execution, in the hands of the purchaser under the second execution; although, as to any other party, the goods were bound by the prior delivery of the first writ, under which the sheriff ought to have taken and sold them.   This distinction seems to have been considered necessary, in order that the ends of justice might be advanced, which it was thought would be frustrated, should the sales made under executions be suffered to be invalidated by other executions, in being before or at the same time.   Smallcomb *v.* Cross, 1 *Lord Raym.* 252; Hutchison *v.* Johnson, 1 *Term Rep.* 729.   It is certainly of the first importance, in order that the ends of justice may be fully met and answered, that personal, as well as real estate, should bring fair prices at judicial sales, which cannot be effected with any degree of certainty, without giving all reasonable protection to the purchasers thereof.   And seeing such sales are not only made publicly, but at a certain time and place, fixed on for that purpose by the proper officer of which he is required to give a certain previous notice, either by written or printed hand-bills, set up in the most public places, or advertisements published in the newspapers of the county, so that all wishing to buy may be informed of the sale about to be made, and that other officers, having judicial process in their hands, which they ought to execute, may be advised of what is going on, and assert their claims of preference, if they have any, it would seem to be both expedient and reasonable, that property once sold, in this manner, should not be liable to be sold a second time, under judicial process against the same defendant, after it shall have gone into the hands of the purchaser, at the first sale.   If an officer, who has judicial process placed in his hands to be executed, shall, through neglect of duty, or want of proper vigilance upon his part, suffer a sale of property to be made, under judicial process of later date, as to lien, whereby an injury or loss shall accrue to the party in whose favour he holds such process, it is better that he should be held liable for such loss than that the purchaser should be disturbed in his enjoyment of the property after having bought and paid for it.   Under this view of the case, and the law applicable to it, we are of opinion, that the sale of the goods in question, so far as the constable took and sold them, under the execution against Rebecca Fellows, as the executrix of Moses Fellows, deceased, was good, and that the sheriff could not afterwards take the same goods out of the possession of the purchaser at constable's sale.   Consequently, if Duncan, the defendant below, either advised the sheriff or his deputy to take the goods, or aided in doing so, he thereby became a trespasser, and liable to be sued by the plaintiff below as such.   But in regard to the goods taken and sold by the constable, under the execution against Rebecca Fellows, individually in her own right, we

[Duncan v. M'Cumber.]

think the constable had no right to take the goods in her possession belonging to the estate of Moses Fellows, the testator, as long as the sheriff had in his hands an execution against her, as executrix of the testator, which bound the goods. Farr *v.* Newman, 4 *Term Rep.* 621. The court below, however, instructed the jury otherwise.

Judgment reversed, and a *venire facias de novo* awarded.