# Duncan *against* M'Cumber.

A sale of personal property by a constable upon an execution, gives a good title to the purchaser, although the same property had been levied by a prior execution in the hands of the sheriff. The controversy between the execution creditors must be determined by an appropriation of the proceeds of sale.

ERROR to the Common Pleas of *Erie* county.

This was an action of trespass *de bonis asportatis*, brought by Solomon M'Cumber, the defendant in error, against James Duncan, the plaintiff in error. The goods in question were part of the personal estate of Moses Fellows at the time of his decease; and as such were thereupon taken into possession by Rebecca Fellows, his executrix and widow. Upon a judgment obtained against her, as the executrix of Moses Fellows, in favour of James Duncan, in the Common Pleas of Erie county, a writ of *fieri facias* was sued out to May Term 1839, directed to the sheriff of Erie county, and delivered to him to be executed on the 27th day of March 1839, in the borough of Erie; at which place, it seems, that the sheriff, without going to the residence of Rebecca Fellows, about fourteen miles from the borough, where the goods then were, endorsed a seizure of them upon the back of the writ, without seeing them, or having them in his power; and without attempting

[Duncan v. M'Cumber.]

to take the possession of them, until twenty days or more afterwards, when, in the meanwhile, they had come into the hands and possession of the defendant in error, as a purchaser thereof at constable's sale, made under the following circumstances. On the 1st of April 1839, an execution was issued by Thomas Greenwood, a justice of the peace of Erie county, against Rebecca Fellows, in her own right, as it would appear by the execution, at the suit of Ezra Thompson, for $70.79, besides costs of suit: also, on the next day, another execution was issued by P. Wells, another justice of the peace of Erie county, against Rebecca Fellows, as executrix of Moses Fellows, deceased, at the suit of Timothy J. Newton, for a debt of $6.20, besides 82 cents costs; both of which executions were directed to the constable of Harborcreek township, in Erie county. On the 2d day of April 1839, he, by virtue thereof, actually took the goods from the possession of Rebecca Fellows where he found them, and in the course of ten or twelve days afterwards, sold them at public auction to the defendant in error, after giving due notice thereof. $5.14 were endorsed on the latter execution as paid out of the proceeds of sale. The goods, upon the defendant in error's paying for them, were accordingly delivered by the constable to him; from whom the plaintiff in error, in company with the deputy sheriff, afterwards, but before the return-day of the *fieri facias,* took the goods by virtue thereof.

Upon the trial, after the evidence was given to the jury, the defendant requested the court to charge the jury:

4. That the sale on the execution of Ezra Thompson against Rebecca Fellows, in her individual capacity, vests no title in the plaintiff; and the endorsement on the execution of T. J. Newton of but $5.14, not the whole amount of the execution, is so entirely disproportioned to the value of the property sold, that the circumstance of the levy being made on that execution in the hands of the constable, vests no title in M'Cumber, the purchaser at that sale, either with or without notice.

5. That if Duncan gave public notice at the time of sale, the presumption is that M'Cumber had notice of the writ and levy in the sheriff's hands, he being present at the sale and bidding at the property; and if he had notice of that writ, sufficient to put him upon inquiry, the sale vests no title in him as against Duncan, the plaintiff in that execution.

The court below answered the first point in the negative, and instructed the jury upon the last as follows:

In answer to this point, we instruct you that the question of notice is a question of facts for you, with this instruction as to the land. If the notice was given while the bidding was going on, and M'Cumber was there, and proved to be present on the ground while others heard it, the presumption would be, that he heard it, also. Is it proved that M'Cumber was present? The constable

II.—34                    x

[Duncan v. M'Cumber.]

thinks he had not come to the sale at the time of the notice given; others think he was about the premises. To affect M'Cumber, it must be clearly shown that he had actual notice, or was on the ground and where he might have heard it. And if he heard what was said, was it notice from the sheriff that he intended to claim the property by virtue of his lien?—or it is sufficient if it was notice by a person having an interest in the execution. But if it is not shown that he was present when notice was given, or if he came after notice given, he is not affected with it, as no notice was written, printed, or stuck up on the ground; it was, if I remember the testimony right, a declaration that the sheriff had a lien by virtue of an execution in his hands in favour of Duncan, and people were forbid to buy. This would have been sufficient notice, if M'Cumber had heard it, or if it had been posted up.

To which charge, the defendant excepted.

*Walker* and *Galbreath*, for plaintiff in error, contended that the sale was made upon the large execution in the hands of the constable; and that being against Rebecca Fellows, in her individual capacity, it gave no title to the property sold which belonged to the estate of her husband; and the fact that that execution was paid in full, and the small one only in part, showed clearly that the sale was made on the former.

*Babbit*, for defendant in error, argued that inasmuch as the constable had in his hands lawful authority to make the sale, a good title was given to the purchaser; and whether the constable appropriated the proceeds to one execution or the other, could not affect the purchaser. If he appropriated it erroneously, the party injured has his remedy.

The opinion of the Court was delivered by

Rogers, J.—The only points presented, are those which arise upon the answers to the third point of the plaintiff, and the fourth and fifth points of the defendant. Under the Statute, 29 *Car.* 2, it has been held, that goods bought at a sale made under an execution delivered to the sheriff subsequently to the delivery of a prior execution, were protected from the prior execution, in the hands of the purchaser under the second execution; although, as to any other party, the goods were bound by the prior delivery of the first writ, under which the sheriff ought to have taken and sold them. (10 *Watts* 212). And this principle is supported by the authorities cited; it is founded on a principle of policy, by which, in consequence of the certainty of the title to the purchaser, the goods will bring their full value, and because no injury can be done to the first execution creditor, he being entitled to the proceeds in satisfaction of his debt. The law, therefore, properly

[Duncan v. M'Cumber.]

leaves the matter to be adjusted between the first and second execution creditors and the sheriff, without affecting the title of the sheriff's vendee. Nor is a knowledge of the fact, that the goods are sold on the second execution, any impeachment of the vendee's title. The same principle applies to the sale of the goods by the constable, when a prior execution has been put in the hands of the sheriff, who has omitted to make a levy on the goods. I throw out of view all idea of collusion between the purchaser and creditor or constable; for there is no evidence whatever tending to show any participation by him in procuring the sale by the constable. At the time of the sale, there were two executions in the hands of the constable: one against Rebecca Fellows, for about $70, in her individual capacity; the other, for $6.20, as the executrix of her husband. The latter only bound the goods, inasmuch as the property seized belonged to the estate of her deceased husband. Of course the sale, which was on both executions, could only properly be made on the small one. In consequence of the sale being made in satisfaction of both executions, and because he was unable to get bids for the property, when offered for sale separately, the constable sold the horses, wagons, and harness, altogether, and the plaintiff became the purchaser. Did, then, the purchaser obtain a title? and on this question we cannot entertain a doubt. It is not his business to give directions to the constable, who is an officer of the law, or for him to decide whether the constable was in the line of his duty in selling on both executions—whether he was justifiable in exposing the property to sale together, or whether it ought to have been sold separately. A suggestion of this kind might have been treated by the officer as an impertinent interference with his appropriate duties. In many cases, a purchaser would have but little knowledge of the facts of the case; or if he had, would in most cases be incompetent to advise as to the proper course. The law, therefore, wisely leaves the whole responsibility to the officer himself; and if he has failed to perform his duty, he is answerable to those who may be aggrieved. The property sold for about $80, a sum much more than enough to pay the execution on which it was sold; with the application of the money, however, the purchaser has nothing to do; that is a matter resting entirely between the constable and the other creditors who may have claims to the property. So, if any person is aggrieved by the mode of conducting the sale, the constable must answer in damages. We do not consider knowledge on the part of the purchaser material, unaccompanied by collusion and fraud.

Judgment affirmed.