# Wilson's Appeal.

1. Without a levy, a writ of *fieri facias* creates no lien upon real estate, independent of the judgment which it executes.

2. Real estate, the sale of which produced a fund in court, belonged to A., who inherited it from his father. The descent was cast on the 29th of September, at about 11 o'clock A. M. The appellant's judgment against A. was entered between 8 and 10 P. M. of the same day. C. obtained a judgment against A. on the 21st of February 1874, and on September 29th 1877, after the entry of appellant's judgment issued a *fieri facias* which reached the sheriff at 11 P. M. There was no levy under this fi. fa. until several days thereafter. *Held*, that said execution was not entitled to come in upon the fund as against appellant's judgment.

May 26th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. STERRETT, J., absent.

Appeal from the Court of Common Pleas of *Juniata county*: Of May Term 1879, No. 15.

Appeal of H. Latimer Wilson, executor of William Curran, deceased, from the decree of the court, making distribution of the proceeds of a sheriff's sale of the real estate of Joseph Adams.

William Adams, the father of Joseph Adams, died on the 29th of September 1877, intestate, seised of certain real estate. On the same day the appellant entered a judgment, on warrant of attorney, in the Common Pleas of said county, against the said Joseph Adams, for $959.61. This was the first lien on the real estate which produced the fund in court, and which descended to the defendant on the death of his father.

On the 21st of February 1874, John Cleck obtained judgment, by warrant of attorney, against Joseph and Mary Adams, for $1362. This judgment was not a lien, having been entered before the defendant acquired any real estate. But on the same day that the title vested in Joseph Adams, by the death of his father, Cleck issued a fieri facias upon his judgment, which came to the hands of the sheriff at 11 o'clock, P. M., but the sheriff did not levy on the real estate until the 3d of November following. Afterwards, the real estate was sold by the sheriff for $1400, and the money brought into court for distribution.

The court filed the subjoined opinion :

" The following facts are agreed upon, to wit:

" 1. On the 21st of February 1874, John Cleck obtained judgment No. 21, April Term 1874, against Joseph Adams for $1362.

" 2. On the 29th of September 1877, about 11 o'clock in the forenoon, William Adams, the father of Joseph Adams (the defendant), died, and the latter inherited from his father, by descent, the real estate which produced the fund in court.

" 3. On the 29th of September 1877, between the hours of 8 and 10 o'clock, P. M. of that day, H. L. Wilson, executor of William Curran, entered a judgment against Joseph Adams to No. 45, December Term 1877, for $959.

[Wilson's Appeal.]

" 4. On the 29th of September 1877, and after the entry of this last-mentioned judgment, No. 45, December Term 1877, John Cleck, the plaintiff in judgment No. 21, April Term 1874, issued a fieri facias thereon, which came to the hands of the sheriff at 11 o'clock P. M. of said day, but no levy on the real estate so descended to Joseph Adams, the defendant, was endorsed on the fieri facias that day. The fieri facias is No. 12, December Term 1877 ; and on vend. ex. No. 8, February Term 1878, the land so descended to Joseph Adams, was sold for $1400. The question is, does the judgment of Wilson, executor of Curran, entered 29th September 1877, eleven hours after the descent cast (but same day), take precedence of the lien secured by the fieri facias issued on Cleck's judgment, twelve hours after the descent cast, (but on same day), or *both being liens obtained the same day do they take pro rata ?*

" First then, did the mere issuing of the fieri facias, without a levy on the land create a lien ?   Both sides concede that it did, as our Act of Assembly relating to executions declares that ' no writ of fieri facias or other writ of execution shall bind the property or the goods of the person against whom such writ of execution is sued forth, but from such time as such writ shall be delivered to the sheriff, under sheriff or coroner to be executed, and require the officer to *time* such writ when received ; and after this if the defendant do not pay, the sheriff is to proceed to *levy* and *sell*, &c. In Mifflin v. Will, 2 Yeates 177, delivery of the writ at sheriff's office or house was held to bind defendant's personal property, and binds from delivery whether a levy is made or not : Duncan v. McCumber, 10 Watts 212 ; Schuylkill County's Appeal, 6 Casey 358 ; Wilson, Sieger & Co.'s Appeal, 1 Harris 429 ; Shaeffer v. Gilmore, 3 W. & S. 438 ; McCormick v. Miller, 3 P. & W. 230 ; Jones v. Atherton, 7 Jaunt. 56 ; 2 E. C. L. Rep. 258 ; which show that although the sheriff levies upon and sells upon the second writ, the first writ will be entitled to the money : Drew v. Lanison, 11 Ad. & E. 529.'   True, all these relate to personal property, but in Pennsylvania, lands are chattels for payment of debts.   It is true, that in Packer's Appeal, 6 Barr 277, there was a levy, but the question of lien by delivery of the writ did not arise.   We think the law is settled that where the judgment on which the fieri facias issues has never been a lien on the real estate of the debtor, as in after-acquired real estate, the execution becomes a lien : Packer's Appeal, 6 Barr 277.   We now come to the question of priority, as between the lien by judgment and the lien by execution.   We admitted parol evidence to show, first, when the estate descended to the defendant ; and second, when or at what hour of the day of descent, the judgment was entered, and the sheriff's endorsement proved at what time the fieri facias came into his hands.

[Wilson's Appeal.]

" That the judgment was entered after the descent cast, and before the fieri facias issued (all on the same day, however,) is clear. Metzler *v.* Kilgore, 3 P. & W. 245; Claason's Appeal, 10 Harris 359; Hendrickson's Appeal, 12 Id. 363; Mechanics' Bank *v.* Garman, 8 W. & S. 304; Small's Appeal, 12 Harris 398; Lanning *v.* Pawson, 2 Wright 480 and Boyer's Appeal, 1 P. F. Smith 432, all show, that not only as between judgments entered on the same day is there no priority, but that the same principle applies to all liens. For instance, in Claason's Appeal, 10 Harris 359, the contest was between a judgment and a mortgage in which it was shown by parol that the judgment was entered between 7 and 8 o'clock, and the mortgage about 8 o'clock P. M., and it was said that the precise time when a mortgage is left for record, is noted in order to determine the priority between mortgages, but as no such minute is made upon the entry of a judgment, if fractions of a day are to be considered in ascertaining which is first in lien, parol evidence must necessarily be resorted to, and the value of the encumbrance will then depend upon the lives, accuracy and truthfulness of witnesses, instead of a certain safe and reliable record open to inspection of every person interested, and which tells the same story at all times, and under all circumstances; and it is stated that no reason was discoveed why the principles which reject fractions of a day, should not be applied to mortgages when the contestant is a judgment, and the parol evidence was held immaterial, and should have been rejected. The Act of 28th March 1820, gives mortgages priority as to each other even when entered on the same day, so that the date of entry is for that purpose. Hendrickson's Appeal, 12 Harris 363, arose two years after Claason's case, and was decided the same way, upon general principles, as seen in the second sentence of Judge BLACK's opinion, whilst the third sentence is made the syllabus by the reporter as the point ruled, which was no more than stating that even if there could be priority, there was no means of ascertaining it, but the point ruled was that there could be none. In Boyer's Estate, 1 P. F. Smith 432, the same principle is announced. It is true that in this case, the Mechanics' Bank *v.* Garman, 8 W. & S. 304, and others, as Lanning *v.* Pawson, 2 Wright 480, it is conceded that in favor of a conveyance by the debtor, the precise hour of the day when a judgment is entered may be shown, or any other matter *in pais* out of which other rights have arisen, because it would, says Judge GIBSON, be impossible to put a judgment and a conveyance on a footing of equality, not only because it would be impracticable to determine the relative proportions coming to each, but because they are inconsistent and irreconcilable. The one is a security which encumbers the property in exclusion of everything subsequent to it; the other a conveyance excluding everything to which it is anterior, and they are therefore incapable of

standing together. When judgments bear the same date they must necessarily come in together, but as between judgments and a conveyance, actual priority must be shown, like any other fact.

"So far has this principle been carried, rejecting fractions of a day, that in Long's Appeal, 11 Harris 297, there is no priority between several writs of foreign attachment, served or levied on the same day, on personal or real estate, and the reasoning of Judge LEWIS, is very full. Now, in the present case, we have a lien by judgment and one by execution, both acquired on the same day; both encumbrances, and why should the rule be different from that which prevails between a judgment and a mortgage. Said C. J. TILGHMAN, in Sims v. Hampton, 1 S. & R. 412, 'there shall be no fractions of a day except in a case of necessity;' and in Long's Appeal, supra, Judge LEWIS said, 'neither justice nor necessity requires that one creditor should be aided in seizing all the assets of his debtor, to the entire exclusion of others equally meritorious.' It is contended, that the Act of Assembly which requires the sheriff to endorse time, &c., on executions, fixes the time of lien, and that as against this sort of lien, the exact moment of the entry of the judgment, ought to be permitted to be shown. But this provision was manifestly only intended to operate as between executions issued on the same day. We are of opinion that the liens in this case must be treated as commencing at the same moment of time, and that the fund must be apportioned between them."

A decree was entered accordingly, and therefrom this appeal was taken.

*Jeremiah Lyons* and *Edward S. Doty & Son*, for appellant.— The execution on the Cleck judgment was not a lien on the after-acquired land until an actual levy was made.

*Louis E. Atkinson*, for appellee.

Mr. Justice PAXSON delivered the opinion of the court, June 23d 1879.

At common law a writ of fieri facias bound the personal property of the defendant from the *teste* of the writ. The Act of 16th June 1836, Pamph. L. 768, provides that "no writ of fieri facias, or other writ of execution, shall bind the property or the goods of the person against whom such writ of execution is sued forth, but from the time such writ shall be delivered to the sheriff, under-sheriff, or coroner to be executed." The 40th section of said act requires the sheriff to endorse on a fi. fa. the day of the month, the year and the hour of the day when any such writ shall come into his hands. It has been repeatedly held that the writ is a lien from the time it is lodged with the sheriff: Mifflin v. Will, 2 Yeates 177 ; Duncan

*v.* McCumber, 10 Watts 212; Schuylkill County's Appeal, 6 Casey 358; Wilson's Appeal, 1 Harris 426; Shafer *v.* Gilmore, 3 W. & S. 438. All these cases, however, and many others that might be cited, refer to personal property. It has never yet been held that the lien of a fieri facias attaches to real estate without a levy. It was settled in Colhoun *v.* Snider, 6 Binn. 135, that after-acquired lands were not bound by a judgment previously entered. But an execution issued upon such judgment, and levied upon such subsequently-acquired lands, is a lien thereon: Packer's Appeal, 6 Barr 277. It is true the question of lien by the mere delivery of the writ to the sheriff was not raised in Packer's Appeal, nor am I aware of its having been raised in any other case. The reason for it probably is the general acquiescence of the profession in the belief that a fi. fa. was not a lien upon real estate without a levy. We find *dicta* scattered through our books tending to show that such has been the impression, at least, of the judicial mind. Thus, in Betz's Appeal, 1 P. & W. 278, it was said by Justice SMITH that "the fieri facias itself is no lien upon the land until it is seized in execution by virtue of the writ;" and by Justice ROGERS, in Boal's Appeal, 2 Rawle, at page 39: "It is the opinion of the majority of the court, that as the writ of restitution is strictly an execution, it comes within the same rules as other executions; and that the lien commences on the goods from the time the writ goes into the hands of the sheriff, and on the lands from the time of the levy."

It was held by the learned judge of the court below that inasmuch as lands are chattels for the payment of debts by our law, the lien of the fi. fa. attached without a levy. It is true that in Pennsylvania lands are liable for the debts of the owner, but they are so *sub modo* only, they are not primarily liable. It is the duty of the sheriff to levy first upon the personal property, but "if sufficient personal estate cannot be found by such officer, he shall proceed to levy upon the defendant's real estate." See Act of 16th of June 1836, sect. 43, Pamph. L. 769. The plain object of the provision in the Act of 1836, first above cited, was to prevent the lien of the fi. fa. relating back to the *teste* of the writ. Had it been intended to make such writ a lien upon real estate from the time it came into the hands of the sheriff, such intention would have been doubtless clearly expressed in the act. It is expressly provided by the Act of 1836 that a *testatum fi. fa.* shall be a lien upon the real estate of the defendant, in the county to which it shall be sent, for the period of five years, and it is required to be docketed and go upon the judgment-index. As indicative of the legislative mind, it is not out of place to refer to the 9th section of the Act of 20th April 1853, Pamph. L. 611, relating to executions levied on after-acquired real estate in Philadelphia, which provides that all such executions may, on application of the execution-creditor, be certified

[Wilson's Appeal.]

by the officer making such levy, to the officer of the court from which such execution issued, when it shall be docketed on the judgment-index, and thenceforth bind such real estate for five years like any other judgment, and unless such levy be so certified and indexed it shall be no lien on such real estate. The Act of 22d April 1856, Pamph. L. 532, is general and provides in the third section that "the lien of no judgment, recognisance, execution *levied on real estate* in the same or another county, or of writs of scire facias to revive or have execution of judgments, shall commence or be. continued, as against any purchaser or mortgagee, unless the same be. indexed in the county where the real estate is situated, in a book to be called the judgment-index; and it shall be the duty of the prothonotary or clerk forthwith to index the same, according to priority of date, and the plaintiff shall furnish the proper information to enable him to perform said duty." It will thus be seen that an execution *levied* upon real estate of a defendant is not a lien as against a purchaser or mortgagee unless regularly entered upon the judgment-index. We regard it as equally clear that without a levy a writ of fieri facias creates no lien upon real estate independent of the lien of the judgment which it executes.

The real estate, the sale of which produced the fund in court, belonged to Joseph Adams, who inherited it from his father. The descent was cast on the 29th day of September 1877, at about eleven o'clock, A. M. The appellant's judgment against Joseph Adams was entered between the hours of eight and ten, P. M., of the same day. John Cleck, the appellee, obtained a judgment against said Adams on the 21st of February 1874, and on the said 29th of September 1877, and after the entry of the appellant's judgment, issued a fieri facias which reached the sheriff at eleven o'clock, P. M. As, however, there was no levy under this fi. fa. until some days afterwards, it is manifest, in view of the principles above stated, said execution was not entitled to come in upon the fund as against the judgment of the appellant.

> The decree is reversed, at the costs of the appellees, and it is now ordered and decreed that the fund in court be applied first, to the payment of the judgment of the appellant, H. L. Wilson, executor of Joseph Adams, No. 45, December Term 1877, and that the balance, if any, thereafter remaining of said fund, be applied to the execution of the appellee, Cleck *v.* Adams, *vend. ex.*, No. 8, February Term 1878.