## THE DANIEL KAINE.

JAMES DALZELL'S SON & CO., Limited, *et al. v.* THE DANIEL KAINE.

*(District Court, W. D. Pennsylvania. May 29, 1888.)*

1. SHIPPING—OWNERSHIP IN VESSEL—PARTNERSHIP.
   The running of a steam-boat on shares does not make the owners partners in respect to the vessel itself.
2. MARITIME LIENS—ADVANCES—BY PART OWNER.
   Where a steam-boat is not partnership property, but her part owners are tenants in common simply, one of them has no lien upon the share of another for advances.
3. SAME.
   Nor does it make any difference that the partner making such advances was also the master of the vessel.
4. SAME—EXECUTION—FROM STATE COURT—LEVY AND LIEN.
   After seizure of a steam-boat by the marshal upon process in admiralty and a decree of condemnation, but before sale, a writ of *fi. fa.* issued out of the state court upon a judgment against one of the part owners of the vessel, and was put in the hands of the sheriff. In the distribution of the proceeds of the marshal's sale, *held* that, as against the defendant in the execution, the

plaintiff therein acquired a lien as soon as his writ reached the sheriff's hands, and that, after satisfaction of all admiralty liens and liens of domestic creditors for supplies, etc., under the local statute, the execution creditor was entitled to the defendant's remaining share of the surplus.

In Admiralty.  *Sur* exceptions to the commissioner's report.

*Wm. L. Bird,* for the steamer Twilight.

*Knox & Reed* and *Miller & McBride,* for R. W. Cowan.

*John S. Ferguson,* for James Lynn.

*George Shiras, Jr.,* and *A. L. Large,* for Joseph Payne's administrators.

*Charles C. Dickey,* for sheriff of Allegheny county.

*John F. Edmundson* and *E. P. Douglass,* for J. G. Leezer.

ACHESON, J.    This is a contest over the surplus in the registry of the court from the sale of the steam tow-boat Daniel Kaine, after satisfaction of all maritime liens, and the liens of domestic creditors, for supplies, etc., under the state statute.    The commissioner allotted the fund to the several owners of the vessel, according to their respective shares in her.    Objecting to this appropriation are—*First,* the owners of the steamer Twilight, who hold a promissory note signed, "DANIEL KAINE, and owners," and given by the master of the boat; *second,* R. W. Cowan, one of the owners of the Daniel Kaine, who asserts a lien for advances and disbursements made by him, and also for his wages as master of the boat; and, *third,* execution creditors of James Lynn, one of the owners of the boat.

1.  The service rendered by the Twilight being a home service, and not embraced within the state statute, the commissioner, I think, was clearly right in holding that the note given therefor was not a lien on the boat, and hence not payable out of the fund in the registry of the court.    *The Edith,* 94 U. S. 518.

2.  The burden of proof is upon Capt. Cowan to establish the allegation contained in his petition, but which is denied in the answer thereto, that the shareholders in the Daniel Kaine were not tenants in common, but partners in respect to the ownership of the vessel.    3 Kent, Comm. *155.    Has he succeeded in this?    The evidence bearing upon this point is as follows:    The boat was built by James Lynn, George T. Miller, and R. W. Cowan, who from the first held her in defined shares,— Lynn and Miller each owning seven-eighteenths, and Cowan owning four-eighteenths.    Thus was the boat enrolled on February 8, 1882.    Speaking of her enrollment, Capt. Cowan testifies: "There was no other agreement among us than that the boat should be as set out in the registry." In April, 1886, George T. Miller transferred his seven-eighteenths in the boat to George B. Kaine.    Capt. Cowan further states that there was no written agreement between the owners of the boat as to how she was to be operated, nor any verbal agreement that she was to be run or operated in partnership.    However, it seems that, by the tacit consent of all the owners, she was run on joint account.    Her employment was in the towing of coal, and at first she was principally engaged in towing for two coal firms, in one of which Lynn was a member, and in the other

Miller, viz., James Lynn & Son, and George T. Miller & Co. The book-keeper who kept the books of the boat made out and furnished annually to the several owners balance sheets, in which the cost of the boat appeared as an item. Do these facts establish that the shareholders in the Daniel Kaine were partners in her ownership? I think not. That the cost of the boat appeared in the balance sheets which the book-keeper made out is not a controlling circumstance, and, indeed, is a matter of little moment, when considered in connection with Capt. Cowan's testimony, above quoted. According to the enrollment of the boat, her part-owners were tenants in common, and there was no different or other agreement as to ownership. An agreement to run a ship on shares does not make the owners partners with respect to the vessel. *The Larch*, 2 Curt. 434. Says Chief Justice GIBSON, in *Hopkins* v. *Forsyth*, 14 Pa. St. 38:

"Carriers may doubtless become partners, but not merely by becoming joint owners of a chattel, and using it for a common purpose. And the principle is peculiarly applicable to ships or other craft, the exceptions to it in respect to them being always founded in very special circumstances."

Now, where the vessel is not partnership property, according to the clear weight of authority in this country, one part owner has no lien for his advances and disbursements upon the share of his co-owner. *The Randolph*, Gilp. 457; *Merrill* v. *Bartlett*, 6 Pick. 46; *Macy* v. *DeWolf*, 3 Woodb. & M. 193, 205; *The Larch, supra*. Nor does it make any difference that the part owner making such advances was also the ship's husband. *Macy* v. *DeWolf, supra; The Larch, supra; Hopkins* v. *Forsyth, supra; White* v. *Proceeds, etc.*, 19 Fed. Rep. 848. In treating of this subject, Mr. Justice CURTIS, in the case of *The Larch, supra*, after remarking that in England the law is now settled against the existence of the lien, said:

"There has been some diversity of decision in this country, but I think it has proceeded from diversity in the views taken of the particular facts of the cases, rather than from any real difference in principles. That the owners of a vessel may be copartners in respect to that as well as any other property, and that, when they are so, each has a lien, cannot be doubted. But where no such special relation exists, where they are merely part owners, and as such tenants in common, that one has no lien on the share of another for advances, I believe to be equally clear."

In so far as the state statute gave Capt. Cowan a lien for his wages as master, the commissioner allowed his claim, and beyond that it is clear he had no lien, and, therefore, is not entitled to payment out of the fund in question. *The Orleans*, 11 Pet. 175; *The Edith, supra*.

Having thus reached the conclusion that Capt. Cowan had no lien, it is not necessary to consider the objection made to the allowance of his claims by a court of admiralty based on the unsettled and disputed condition of the accounts between the owners of the boat.

3. By virtue of the writ of attachment issued in this case, the marshal seized the Daniel Kaine on February 15, 1887. There was a decree of condemnation on March 2, 1887, and the marshal sold the boat

on March 14, 1887. Upon two judgments against James Lynn, individually, obtained in the court of common pleas of Allegheny county, one in favor of Joseph Payne, administrator of Andrew Finney, deceased, and the other in favor of J. G. Leezer, writs of *fi. fa.* issued after the seizure of the Daniel Kaine by the marshal, but before her sale. The Payne execution (*fi. fa.*) was issued on March 3, 1887, and was received by the sheriff the same day at 4:15 o'clock P. M. By the return of the sheriff to this writ it appears that on March 7, 1887, he "levied upon all the right, title, and interest of the defendant in steam-boat Daniel Kaine in the hands of United States marshal, and gave notice to United States Marshal Miller of said levy, and made claim upon proceeds of sale of boat." The Leezer execution (*fi. fa.*) was issued, and came into the sheriff's hands on March 4, 1887. Upon the Leezer judgment there was also issued a writ of execution attachment, which was served on the marshal on March 12, 1887. As, however, the Payne execution is sufficient to exhaust the whole share of Lynn in the fund in the registry of the court, and by reason of its priority in time it is entitled to preference over the Leezer writs, nothing further need be said in respect to the latter writs.

Such being the facts, the question now to be determined is, what right, if any, the plaintiff in the Payne execution acquired as against James Lynn by virtue of the proceedings in the state court. Did he thereby secure a lien against Lynn's interest in the boat? It cannot be maintained that the attachment by the marshal, or the decree of condemnation, or both, in themselves and without more, operated to extinguish the title of James Lynn. Subject to the special property which the marshal had acquired by his seizure, and the rights of the libelants, Lynn's interest in the boat remained in him. Certainly, he might have made a voluntary transfer of his remaining interest. Was it, then, beyond the reach of his execution creditor, whose judgment was in the state court? It is, indeed, undeniable that this court had obtained exclusive jurisdiction over the vessel for all the purposes of the suit which had been here instituted, (*Heidritter* v. *Oil-Cloth Co.*, 112 U. S. 294, 5 Sup. Ct. Rep. 135;) and it is not to be doubted that property once attached or levied on is in the custody of the law, and is not liable to be taken by another execution in the hands of a different officer, especially if that officer is acting under a different jurisdiction, (*Hagan* v. *Lucas*, 10 Pet. 400; *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 450.) It will be perceived, however, that the sheriff's levy here did not involve the disposition or control of the property. It was made in manifest subordination to and recognition of the right of the marshal to hold and dispose of the vessel. Nor was actual seizure necessary to give efficacy to the sheriff's levy, as it was made, not upon the *res* itself, but merely upon the defendant's interest. *Srodes* v. *Caven*, 3 Watts, 258; *Welsh* v. *Bell*, 32 Pa. St. 13. But the execution creditor here need not stand on the sheriff's levy. In Pennsylvania a *fi. fa.* binds all the defendant's personal property in the bailiwick, whether there is a levy or not; and the lien attaches from the time the writ is put in the sheriff's hands. *Dun-*

*can* v. *McCumber*, 10 Watts, 212. The issuing of the execution from the court of common pleas was not an interference with the marshal, and in nowise tended to bring about a conflict of jurisdiction. What good reason, then, is there for denying to this execution creditor the benefit of a lien? In *Heidritter* v. *Oil-Cloth Co.*, *supra*, the court noticed and carefully distinguished between the proceedings in the state court for the purpose of declaring and establishing the mechanic's lien, and the subsequent proceedings involving the sale of the property, the latter only being adjudged void. In *Bayard* v. *Bayard*, 3 Clark, 155, (foot paging 261,) we have a decision by the United States circuit court for the Eastern district of Pennsylvania, sustaining the lien of executions from the state courts against property in the hands of the marshal. The case was this: After goods had been levied on by the marshal under several writs of *fi. fa.* from the circuit court, writs of *fi. fa.* against the same defendants were issued from the state courts, and put into the hands of the sheriff. Subsequently another *fi. fa.* was issued from the circuit court, and was delivered to the marshal. In the distribution of the proceeds of the marshal's sale—the sum realized being insufficient to satisfy all the executions—it was held that, after satisfying the prior circuit court executions, the money should be applied to the executions from the state courts in preference to the later execution from the circuit court. The principle decided was that, while the sheriff could not disturb the marshal's possession, still the *fi. fas.* from the state courts, upon delivery to the sheriff, bound the defendant's interest, subject to the marshal's levy. The principle is applicable here. I am of opinion that the writ of *fi. fa.* issued upon the judgment of Joseph Payne, administrator, etc., against James Lynn, became a lien upon the defendant's interest in the towboat Daniel Kaine upon the delivery of the writ into the hands of the sheriff of Allegheny county; and therefore, that said execution creditor is entitled to Lynn's share of the surplus in the registry of the court. Let a decree be drawn in accordance with this opinion.