# Stokes *v.* Dimmick.

*Bill to Subject Property Pledged for the Payment of Debts And for a Receiver.*

(Decided July 3, 1908. 48 South. 66. Rehearing denied Dec. 24, 1908.)

1. *Abatement and Revival; Pendency of Other Action; Identity of Parties and Cause.*—The pendency of a bill filed by S. against a certain railway company and D. and J., who, with S., constituted its board of directors, praying for a receiver to take charge of and operate the road, and for the construction of a contract between S. and D., to ascertain whether any of the indebtedness incurred under the contract is a proper charge against the railroad company, and also to marshall the securities and for a sale of the company's property to pay its debts and distribute its assets, is not a bar to a subsequent bill filed by D. individually against S. individually for the appointment of a receiver to take charge of certain timber interests owned jointly by D. and S. and of the shares and stocks of the company owned by S. and alleged to have been pledged by him to D. for money advanced him by D., and praying that the property be

sold and subjected to the payment of debts; the first bill relating entirely to corporate matters and the second to individual interests.

2. *Pledges; Construction of Contract.*—The agreement by which D. advanced money to S. for which S. pledged his interest in timber and stock in a railroad to secure re-payment, and providing that D. should be first paid out of the proceeds of the timber before S. should receive anything therefrom, does not mean that D. is not entitled to be paid at all, if he and S. cannot agree on the sale of the timber.

3. *Same; Enforcement.*—Where the interest of one person in standing timber with a right to remove the same is pledged to another for the repayment of money advanced, and the time limited for the removal of the timber is close at hand, and the state of feeling between the pledgor and the pledgee is such that they probably cannot agree, and the contract of pledge fails to provide for the enforcement of the lien, equity will supply the remedy and enforce the lien.

4. *Same; Time for Payment.*—Where no time is fixed for the payment of a debt, to secure which, property is pledged, the law will presume a present liability.

5. *Same; Foreclosure; Prayer.*—Although the bill asking for a receiver, in the prayer thereof, mentions only one tract of land, where the bill itself shows that the interest in several tracts of standing timber was pledged for the repayment of various amounts advanced, such bill and prayer does not seek to split up securities by selling only a part thereof, especially when a prayer afterwards added asked for a decree ordering a sale of all the property pledged.

6. *Same.*—Where the clear intent of the prayer is for a decree for a sale of the property pledged for the payment of the debt, it will be so construed although there was an omission of some words in the prayer. This defect should have been reached by demurrer.

7. *Same; Debts Secured.*—Where the pledge made was to scure to the complainant any debt he might have to pay for the A. C. R. R. Co., and thereafter said company authorized its vice president to borrow money to effectuate a trade with the M. & O. R. R. Co., whereby the said company should cancel a claim held against the A. C. R. R. Co., and transfer property to it, but instead thereof the complainant purchased the property from the M. & O. R. R. Co. and took a transfer of it and the assignment of the debt, the matter was not covered by the pledge.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by J. W. Dimmick against M. C. Stokes for the sale of pledged property and the appointment of a receiver pending the litigation. Decree for complainant and respondent appeals. Affirmed

J. M. CHILTON, for appellant. The law is very careful in respect to declaring defaults which are in the na-

ture of a forfeiture. They must be alleged specifically and circumstantially, and not in general terms.—*S. & N. R. Co. v. Lancaster,* 62 Ala. 555; 121 Ala. 135; Ib. 396; Ib. 426; 127 Ala. 195; 135 Ala. 608; 61 Ala. 428; 56 Ala. 468. Counsel discuss other assignments of error, but without citation of authority.

GUNTER & GUNTER, and W. F. THETFORD, JR., for appellee. When no time is fixed for the payment of the debt, the law presumes it payable presently.—*Warren v. Henry, et al.,* 30 Ala. 729. Interest attaches as an incident to the demand when a debt becomes due at the time of its creation.—*Warren v. Henry, supra; Creek v. Waldron,* 25 Ala. 152. Where two courts have concurrent jurisdiction, the one which first takes cognizance of a cause retains it.—*Gay, et al. v. Briarfield,* 94 Ala. 303. This rules has its limitations, and is not applicable to the case at bar.—*Buck v. Colbrath,* 3 Wall. 334; *Andrews v. Smith,* 19 Blatch. 100. The fact that a stockholder is maintaining a bill against a corporation for its dissolution furnishes no reason why the stock of the complaining stockholder may not be sold at the instance of the corporation.—*Tutwiler v. Tuscaloosa C. I. & L. C.,* 89 Ala. 391; *Daniel Cain,* 35 Fed. 785; *Gay, et al. v. Briafield, supra.* The contracts were properly set out in the bill.—*Pike County v. Hanchey,* 119 Ala. 36.

SIMPSON, J.—The bill in this case was filed by the appellee, against the appellant, and sought to collect certain debts, by the appointment of a receiver and the sale of certain property which had been pledged for the payment of said debts. The allegations of the bill are, in substance: That said appellant (Stokes) had obtained from one Smith an option on the timber on certain lands, and had also obtained from one Robinson a conveyance of the timber on certain other lands, to

be paid for in the future; that on August 23, 1904, said respondent (Stokes) entered into an agreement with the said complainant (Dimmick) by which, in consideration of $5,000 cash, and $13,699.60 due November 23, 1904, said Stokes conveyed to said Dimmick one-half interest in said timber contracts, also 166 2-3 shares of the capital stock of the Alabama Central Railway, being two-thirds of the entire stock of said railway company, and it was therein agreed that said Dimmick should receive, from the proceeds of timber sold, $16,-699.61 and any further sums advanced by him to finish said railroad, before Stokes should participate in the proceeds; also, that the interest of Stokes in the timber and his stock in said railway should be held by Dimmick to secure any debts that Dimmick might pay for Stokes or said railway company, not stipulated in the contract. It was also agreed that Stokes should be general manager of said railway, "subject to the approval of the stockholders." On October 18, 1904, said Dimmick loaned to said Stokes $750 and took his note therefor, due January 18, 1905; the agreement being—as shown by a letter and the note—that the stock in said railway owned by Stokes, being 83 and one-third shares, should be held as collateral by Dimmick to secure said note, also that said note and the $16,699.61 should be paid out of the proceeds of timber sales before Stokes should participate in profits from sales of timber or property of said railway. On October 27, 1904, Stokes and Dimmick entered into another contract, reciting that Dimmick had furnished $3,750, and agreed to furnish $13,699.61 to pay Scott & Sons for their interest in the capital stock of said railway and their interest in the timber contracts, and had agreed to furnish $3,000 to complete the first five miles of said railway, and Stokes pledged his stock in said railway and his interest in the timber con-

tracts to secure the payment of said several amounts, aggregating $20,500, which were to be paid out of sales of timber. On June 21, 1905, M. M. Smith, the party from whom 3,500 acres of said timber land had been bought, entered into an agreement with said Stokes and Dimmick, by which certain parts of the timber were reconveyed to said Smith, in consideration of which said Smith acknowledged full payment for the timber, with certain other stipulations. On August 26, 1905, one Robinson, from whom the other timber had been purchased or optioned, executed a paper extending the time of payment for "two years from October 27, 1905."

The bill alleges: That said complainant, Dimmick, has paid out in all $42,000, or more, under the various agreements, for which said timber and stock in said railway are pledged; that the time allowed for cutting said timber will expire on October 27, 1907; that it will require at least four months to remove it; that Stokes has no other property; that the contracts do not authorize complainant to sell said timber; that said Stokes is hostile to him and refuses to agree to sell said timber; that one item of the advances made by complainant was $10,000 paid to the Mobile & Ohio Railroad Company for certain steel rails on the track and an engine and a passenger coach, which had been leased by said Mobile & Ohio Railroad Company to said Alabama Central Railway, and the lease had expired, so that it became necessary to buy said property, or the railway would be deprived of the use of same; that the amount due said Mobile & Ohio Railroad Company was $17,000, but, in consideration of said $10,000 paid by complainant, said Mobile & Ohio Railroad Company executed a conveyance of said property to complainant; that, before the consummation of said sale, he had procured an option and offered to transfer said option to purchase said

16 R

property, but said railway company, not having the money, adopted a resolution authorizing the purchase of said property, by borrowing the money, and pledging the property of said corporation, and complainant made arrangements to lend said money to said railway company, but said Stokes protested against said action, insisting that said sum advanced by complainant should be covered by the contract existing between him and Dimmick. It is also alleged that said Stokes had filed a bill to place the affairs of the said railway company in the hands of a receiver, to sell its property and distribute the proceeds, and that this was done for the purpose of depreciating the market value of its stock. The bill prays: First, for a receiver of the Robinson land and of the shares of stock, that said property be sold to the highest bidder, and the proceeds brought into court, and applied to the payment of the debts due complainant, with a reasonable attorney's fee for the collection of the $750, in accordance with the provisions of the note; second, that it be referred to the register to ascertain the amount due complainant, under said several contracts; third, that, upon the coming in of said report, a decree be rendered "directing that all said property pledged for the payment of said debts, so ascertained, under the orders and directions of this court," be sold; and, fourth, for general relief. The answer alleges that, before the bill in this case was filed, to wit, on Janury 5, 1907, respondent filed his bill in the chancery court against Dimmick and others, that a decree had been rendered therein appointing a receiver, and that the bill is still pending.

The first insistence is that the chancery court, having by said bill, acquired jurisdiction of the subject-matter of this suit, the present bill is without equity. The bill in chancery, as shown by Exhibit A to the answer, was

filed by said Stokes against the "Alabama Central Railway, Joseph W. Dimmick (the complainant in the present case), and J. P. Dimmick," who, with complainant, Stokes, constitute the board of directors of said railway company, and the prayers of said bill were: First, for a receiver to take charge of and operate said railway; second, to construe the contract between said Stokes and Dimmick, for the purpose of determining whether any of said indebtedness is a proper charge against the corporation, and to "marshal the securities;" third, to decree the sale of the property of the corporation, to pay all debts properly owing by it, and distribute the assets. In the present bill said railway company is not a party defendant or complainant, nor are its directors as such, but the bill is by J. W. Dimmick, individually, against said Stokes, individually, and prays for a receiver, not to take charge of and operate the railway; but merely of certain timber interests which, it is claimed, are owned jointly by the parties complainant and defendant, and also of the shares of capital stock in said railway owned by said Stokes and claimed to have been pledged for the debts alleged to be due, and that said property be sold and subjected to the payment of said debts. The bill in the chancery court relates entirely to corporate matters, while this one touches only individual interests. While it is true that in the chancery court case the bill prays for a construction of the contract between said Stokes and Dimmick, yet it is only for the purpose of ascertaining whether said railway company is responsible for any of the debts referred to. The receivership of the railway might be continued, but the interest in and ownership of the capital stock would not be in any way affected thereby, and the stock might be sold either privately or publicly, without, in any way, interfering with the receivership of the railway. The

timber which is sought to be placed in the hands of the receiver, in this case, is not the property of the railway company, but the property of the individuals, Stokes and Dimmick. Whatever may be intended by the prayer in the chancery bill to marshal the securities, it cannot refer to any securities between the parties to this bill, but only to securities held by the railway company, if there were any such. The pendency of the chancery proceedings is no bar to the prosecution of this case.— *Tutwiler v. Tuscaloosa Coal, Iron & Land Co.*, 89 Ala. 391, 399, 7 South. 398; *Daniel Kaine* (D. C.) 35 Fed. 785, 788.

The various contracts set out in the exhibits and averments of the bill show that Dimmick advanced the sums mentioned to Stokes, and Stokes thereby became his debtor, and his interest in the timber, as well as his stock in the railway, was pledged to secure the payment of said sums of money. The exhibits are part of the bill, and will, of course, be looked to in ascertaining the terms of said indebtedness. The provisions in said contracts that said Dimmick was to be first paid out of the sales of timber do not indicate that he was not entitled to be paid at all, if he and Stokes could not agree on a sale of the timber; but this was a provision for the protection of Dimmick, declaring his lien on the share of Stokes, and that Stokes was not to participate in the proceedings of sale until Dimmick was paid. The construction contended for by the appellant would enable Stokes, by refusing to agree to the sale of timber, to prevent the complainant from ever collecting the debts due him. As it is shown that the limited time for the removal of the timber is near at hand, that the state of feeling between the parties is such that it is not probable they can agree, and that the property is pledged to the complainant, but that no way is provided by which he may en-

force his lien, it is the proper province of a court of equity to supply the remedy and enforce the lien. There is no effort to enforce a personal liability against Stokes, but only to subject the property which he has pledged for the payment of the debt, and, even if it be true, as contended by the appellant, that no time is fixed for the payment of the debts, the law will presume a present liability.—*Waring v. Henry & Mott,* 30 Ala. 729.

The contention of appellant that the bill, in this case, is an effort to "split up" the securities, by selling only a part thereof, is not borne out by the record. The bill and exhibits show that not only one tract, but all of the timber interests were pledged for the payment of the various amounts advanced by said Dimmick; and while the first prayer for relief in the bill does mention only the Robinson land, in asking for a receiver, yet the third prayer is for a decree ordering the sale of all the property pledged. It is true that, in this second prayer, there is in the record an omission of some words, but the intent is clear, and, as there was no decree on demurrer to it, it must be construed as stated, and the prayer for general relief is also added. There is no uncertainty as to the objects sought by the bill. It seeks no personal decree against Stokes, but shows that all of the timber interests are pledged, and seeks to enforce that lien. As to the manner of enforcing that lien, the court will decide.

It is next objected that the amount of $10,000 paid to the Mobile & Ohio Railroad Company cannot be included in the amounts for which the property was pledged. The facts, in regard to this item, have been hereinabove set out. The bill and exhibits show that said Stokes had agreed to build the railway in question, was interested in the project, and made various agreements with Dimmick for the purpose of carrying out that enterprise, and that the property was pledged to Dimmick

to secure, not only amounts advanced to Stokes, but "such further sums of money advanced by him to finish the road," and "any debts the party of the second part (said Dimmick) may have to pay for the party of the first part, or the Alabama Central Railway Company, that are not stipulated in the contract." From the answer and exhibits it appears that the action of the board of directors of the Alabama Central Railway Company was to authorize J. P. Dimmick, the vice president, to borrow money to effectuate the trade with the Mobile & Ohio Railroad Company. The facts set out do not show a borrowing, under the terms of the resolution, but a purchase by J. W. Dimmick, who took an assignment of the debts and a transfer of the property, placing himself in the position of the Mobile & Ohio Railroad Company, from which it follows that the complainant has not placed himself in position to claim the enforcement of his lien, as to this $10,000 item. Consequently, this item will not be taken into the accounting.

The decree of the chancellor is affirmed.

TYSON, C. J., and ANDERSON and DENSON, JJ., concur.