## HEIDRITTER *v.* ELIZABETH OIL-CLOTH COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

Argued November 7, 8, 1884.—Decided November 24, 1884.

Where proceedings *in rem* are commenced in a State court and analogous proceedings *in rem* in a court of the United States, against the same property, exclusive jurisdiction for the purposes of its own suit is acquired by the court which first takes possession of the *res ;* and while acts of the other court thereafter, necessary to preserve the existence of a statutory right, may be supported, its other acts in assuming to proceed to judgment and to dispose of the property convey no title.

A derived title to the premises in suit through a seizure by officers of the United States for violation of the internal revenue laws, and condemnation and sale of the same in the Circuit Court of the United States: B derived title to the same premises under judgment and decree in a State court to enforce a mechanic's lien. The proceedings in the State court were commenced and prosecuted to judgment after the marshal had taken the premises into his possession and custody under the proceedings in the Circuit Court: *Held,* That B did not hold the legal title of the premises as against A claiming under the marshal's sale and the decree of the District Court.

This was an action of ejectment for the recovery of certain real estate and the improvements thereon, situated in the City

of Elizabeth, in New Jersey, brought by the plaintiff in error against the defendant in error in the Supreme Court of that State and removed thence into the Circuit Court of the United States on the ground that the case was one arising under the Constitution and laws of the United States. The cause was submitted to the court, the intervention of a jury having been waived. The facts appeared by special findings of the court. So far as material they were as follows :

Both parties claimed title under Charles L. Sicher, who, being the owner of the premises, commenced the erection thereon of a building which he subsequently used as a distillery.

The plaintiff claimed under a deed from the sheriff of Union County, in which the premises are situated, dated September 24, 1873, made to him as a purchaser at a sale under two special writs of *fieri facias*, issued upon two judgments against Sicher, one in favor of August Heidritter for $1,711.22, signed June 14, 1873, the other in favor of Ferdinand Blancke for $272.95, signed June 18, 1873.

The actions in which these judgments were severally rendered were commenced, one on February 21, 1873, the other on March 15, 1873. They were in form actions of *assumpsit*, the declaration in each, however, containing additional averments, showing that they were brought to enforce mechanics' liens upon the building and lot constituting the premises in controversy, according to the provisions of an act of the legislature of New Jersey of March 11, 1853, and the supplements thereto, the premises being specifically described and the accounts for labor and materials on which the actions were founded being set out, in the one case beginning June 21, 1872, in the other September 7, 1872. The respective claims for these liens had been filed, pursuant to the statute, in the office of the clerk of the county, one on February 21, 1873, the other on March 13, 1873.

This statute of New Jersey, Nixon's Digest (4th ed.), 571, Revision of New Jersey, 668, provided for the enforcement of the claim filed, agreeably to its provisions, upon any lien created thereby by suit in a court of the county where such building is situated, to be commenced by summons, in a prescribed form, against the builder and owner of the land and building, con-

taining a statement that the plaintiff claimed a building lien, for the amount set forth, on the building and lands of the defendant, described as in the claim on file.

Two modes of service of this summons were specifically described in the act: one was called actual service, meaning thereby personal service on the defendant, or, if he cannot be found in the State, by affixing a copy thereof on such building, " and also by serving a copy on such defendant personally or by leaving it at his residence ten days before its return." The other was styled legal service, which was, in case the defendant resided out of the State, by affixing a copy on such building and sending a copy by mail, directed to him at the post office nearest his residence, or, in case his residence was not known to the plaintiff, then by affixing a copy to such building and publishing it for four weeks in a newspaper circulating in the county.

The judgment in the action, if for the plaintiff, in case the defendant had been actually served with the summons, was to be general, with costs, as in other cases ; but when only legal service of the summons had been made, judgment against the owner and also against the builder " shall be specially for the debt and costs to be made of the building and lands in the declaration described ; and, in case no general judgment is given against the builder, such proceedings or recovery shall be no bar to any suit for the debt, except for the part thereof actually made under such recovery." When the builder and owner were distinct persons, they might make separate defences, the former that he did not owe the money, the latter, that the building and land were not liable to the debt ; " and, in such case, it shall be necessary for the plaintiff, to entitle him to judgment against the house and lands, to prove that the provisions of this act, requisite to constitute such lien, have been complied with."

" When judgment is entered generally against the builder, a writ of *fieri facias* may issue thereon as in other cases ; and when judgment shall be against the building and lands, a special writ of *fieri facias* may issue to make the amount recovered by sale of the building and lands ; and when both a general and

special judgment shall be given, both writs may be issued, either separately, or combined in one writ." It was further provided that, under such special *fieri facias*, the sheriff should advertise, sell, and convey said building and lot in the same manner as directed by law in case of lands levied upon for debt, and that the sheriff's deed should convey to the purchaser the estate of the owner in the lands and in the buildings which he had at any time after the commencement of the building, subject to all mortgages and other encumbrances created and recorded or registered prior thereto. The building upon the premises in controversy was commenced June 25, 1872, from which time, it is conceded, the mechanics' liens dated, to enforce which the judgments were rendered.

It appears that the summons in the two cases were legally, but not actually, served upon Sicher, his residence not being known to the plaintiff, by affixing a copy thereof to the building, and by a publication for four weeks of a copy.

At the times when these claims for mechanics' liens were filed in the office of the county clerk, and when the actions were commenced to enforce them, the premises in controversy were in the actual custody and possession of the United States marshal for the District of New Jersey under the following circumstances.

The buildings erected by Sicher on the premises in controversy were intended for and were used by him as a distillery, when, on January 24, 1873, they, with the contents of the buildings, were seized by the collector of internal revenue for the Third Collection District of New Jersey, for a forfeiture incurred under the laws of the United States. On February 4, 1873, an information to enforce that forfeiture was filed in the District Court of the United States for the District of New Jersey, and on February 5, 1873, process of attachment was issued to the marshal, who made return of the same on February 19, 1873, that he had taken possession of the property therein named, including the premises in controversy. On February 25, 1873, a sentence of condemnation and forfeiture to the United States was passed, and a writ of execution ordered to issue to sell the same. On March 10th following

that writ was issued, and was returned June 9, 1873, by the marshal, with the indorsement thereon that he had sold the premises to one Edward G. Brown. The proceeds of the sale, after payment of costs, were ordered to be paid to the collector of internal revenue for the use of the United States, and the marshal, on May 29, 1873, executed and delivered a deed to the purchaser, conveying the lands and tenements in fee simple. The sale took place on May 22, 1873. The defendants in error, by mesne conveyances, acquired the title of the purchaser at this sale.

Bills of exceptions were duly taken to the rulings of the court, and judgment was rendered for the defendant below. See 6 Fed. Rep. 138. The plaintiff below sued out this writ of error to reverse that judgment.

*Mr. John R. Emery* and *Mr. Edward A. Day* for plaintiff in error contended that the title acquired by a purchaser under an execution issued on a judgment secured under a mechanics' lien, general as against the owner and special as against the land, is as to the estate which the owner had when the building was begun (*i. e.*, when the excavations were commenced), paramount as to subsequent transfers and encumbrances; and cited *Tompkins* v. *Horton*, 10 C. E. Greene (25 N. J. Eq.) 284; *In re Dey*, 9 Blatchford, 285; *Mutual Benefit Life Ins. Co.* v. *Rowand*, 11 C. E. Greene (26 N.J. Eq.) 389; *Jacobus* v. *Mutual Benefit Life Ins. Co.*, 12 C. E. Greene (27 N.J. Eq.) 604. Under the New Jersey proceeding the United States could not be made party defendant, because the title of the United States was not complete until a judicial determination, although it was true that it then reverted to the commission of the offence. Burroughs on Taxation, 579; Cooley on Taxation, 318; *Bennett* v. *Hunter*, 9 Wall. 326. The internal revenue laws of the United States forfeit only (1) all right, title and interest therein of the offending person; and (2) all right, title and interest therein of every person who, having the right or power to control the use of the property, has knowingly suffered or permitted the land to be used for a distillery. While they forfeit personal property without regard to ownership, they qualify

the forfeiture imposed upon real estate. *United States* v. *Distillery at Spring Valley*, 11 Blatchford, 255; *United States* v. *One Copper Still*, 8 Bissell, 270. A forfeiture can only be applied to those cases in which the means which the statute provides for preventing the forfeiture can be employed by the person whose property or interest in it would otherwise be forfeited. *Peisch* v. *Ware*, 4 Cranch, 347; *United States* v. 33 *Barrels of Spirits*, 1 Lowell, 239. If, for the fault of the distillers, the interest of other innocent persons in the property may be forfeited, the law is open to the objection of unconstitutionality, in that such interest is taken away without hearing, without trial, and without due process of law. *Confiscation Cases*, 20 Wall. 92, 114. *The Mary*, 9 Cranch, 126; *People* v. *Soper*, 7 N. Y. (3 Selden), 428. Statutes will not be understood to forfeit property except for fault of the owner or his agent, unless such construction is unavoidable. Potter's Dwarris, 251; *Peisch* v. *Ware*, 4 Cranch, 347. See also for the construction contended for, *United States* v. *Emhalt*, 105 U. S. 414; *United States* v. *Mackoy*, 2 Dillon, 299. An interest under a mechanic's lien was not the subject of forfeiture. *Confiscation Cases*, 20 Wall. 92, note on claims of Marcuard, page 114. See also *Mc Veigh* v. *United States*, 11 Wall. 259; *Miller* v. *United States*, Ib. 268, 292; *Tyler* v. *Defrees*, Ib. 331; *Brown* v. *Kennedy*, 15 Wall. 591; *Confiscation Cases*, 20 Wall. 92, 117; *Semmes* v. *United States*, 91 U. S. 21; *Osborn* v. *United States*, Id. 474; *Wallach* v. *Van Riswick*, 92 U. S. 202; *Windsor* v. *Mc Veigh*, 93 U. S. 274; *Pike* v. *Wassell*, 94 U. S. 711; *Burbank* v. *Conrad*, 96 U. S. 291; *Burbank* v. *Semmes*, 99 U. S. 138; *French* v. *Wade*, 102 U. S. 132; *Waples* v. *Hays*, 108 U. S. 6; *Waples* v. *United States*, 110 U. S. 630. Counsel further contended that the proceedings in the United States courts did not aim to reach the mechanics' liens; that under the pleadings a valid judgment could not be rendered for forfeiture of the estate on which the distillery stood; and that the plaintiff in error was not concluded by the decree.

*Mr. John F. Dillon* and *Mr. J. T. Richards* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The information alleged violations of numerous sections of the internal revenue laws, which it is not necessary to mention further than to say, that on its face it disclosed a case for a forfeiture under those laws of the property described in it, clearly within the jurisdiction of the court.

The precise question thus arising, is, whether the plaintiff in error acquired the legal title to the premises in controversy, by virtue of the deed from the sheriff of Union County, and the judgments and proceedings on which it was based.

These proceedings, so far as against the owner of the property they undertook to enforce the plaintiff's claim as a lien upon his interest in it, were in the nature of proceedings *in rem*, though not so, perhaps, in technical strictness, for they did not profess to conclude all the world. Such, particularly, was their nature in the cases under consideration, where the owner and builder were one person, and he was served with process only constructively, not actually, being presumably without the jurisdiction of the court. It was declared so to be in *Gordon* v. *Torrey*, 2 McCarter (15 N. J. Eq.) 112.

"The proceeding in such cases," said Mr. Justice Field, delivering the opinion of the court in *Pennoyer* v. *Neff*, 95 U. S. 714, 730, "though in the form of a personal action, has been uniformly treated, where service was not obtained and the party did not voluntarily appear, as effectual and binding merely as a proceeding *in rem*, and as having no operation beyond the disposition of the property, or some interest therein. And the reason assigned for this conclusion has been that which we have already stated, that the tribunals of one State have no jurisdiction over persons beyond its limits, and can inquire only into their obligations to its citizens when exercising its conceded jurisdiction over their property within its limits."

That jurisdiction is called into exercise judicially and attaches, as elsewhere stated in the same opinion (p. 727), "where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property

is always in the possession of its owner in person or by agent; and it proceeds upon the theory that its seizure will inform him not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or lien respecting the same, or to partition it among different owners, or, where the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem*."

In *Cooper* v. *Reynolds*, 10 Wall. 308, 318, it is said by Mr. Justice Miller, delivering the opinion of the court, that, in such cases, where there is no appearance of the defendant and no service of process on him, "the case becomes, in its essential nature, a proceeding *in rem*," and that (p. 317), "while the general rule in regard to jurisdiction *in rem* requires an actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import and which stand for and represent the dominion of the court over the thing and in effect subject it to the control of the court."

This may be by the levy of a writ, or the mere bringing of a suit. "It is immaterial," said this court by Mr. Justice McLean, in *Boswell's Lessee* v. *Otis*, 9 How. 336, "whether the proceeding against the property be by an attachment or bill in chancery. It must be substantially a proceeding *in rem*."

Indeed, so far as the proceedings in question sought to bind the land by enforcing the plaintiff's claim as a specific lien thereon, and to dispose of the premises in satisfaction thereof by a sale, they were substantially *in rem*, whether there was personal or merely constructive service of process upon the defendant owner. The kind of process and mode of service could be material only with reference to the nature of the judgment. He could be bound personally only by his coming or being brought personally within the jurisdiction of the court. But the land might be bound, without actual service of process

upon the owner, in cases where the only object of the proceeding was to enforce a claim against it specifically, of a nature to bind the title. In such cases the land itself must be drawn within the jurisdiction of the court by some assertion of its control and power over it. This, as we have seen, is ordinarily done by actual seizure, but may be done by the mere bringing of the suit in which the claim is sought to be enforced, which may by law be equivalent to a seizure, being the open and public exercise of dominion over it for the purposes of the suit.

When, however, the proceedings were begun for the enforcement of the mechanics' liens against the premises in controversy, by the issuing of the summons and the filing of the declaration, the property over which the State court sought to exert its jurisdiction was in the actual custody and possession of the District Court of the United States for the District of New Jersey. It had been seized by an officer of the United States for an alleged offence against its laws. It was proceeded against as forfeited to the United States, and to declare and enforce that forfeiture judicially, it had been taken possession of by the court. This proceeding was undoubtedly *in rem*, and it is quite immaterial whether the law authorized an absolute forfeiture of the *res*, including all interests and estates in it, so as to overreach antecedent liens and adverse claims, or only of the actual interest of the owner charged with the violations of law at the time of the alleged offences. In either view, and for either purpose, the court had taken possession of the property itself, and that possession was necessarily exclusive. The *res* was thereby drawn into the exclusive jurisdiction and dominion of the United States; and, for the purposes of that suit, it was, at the same time, withdrawn from the jurisdiction of the courts of New Jersey. Any proceeding against it, involving the control and disposition of it, in the latter, while in that condition, was as if it were a proceeding against property in another State. It was vain, nugatory, and void, and as against the proceedings and judgment of the District Court of the United States, and those claiming under them, was without effect.

In this aspect, the case is directly within the rule of decision

established in *Wiswall* v. *Sampson*, 14 How. 52. That was a controversy as to the title to real estate, one party claiming under a sale upon execution, issued on judgments rendered in the Circuit Court of the United States, the property being at the time of this sale in the possession of a receiver of a State court, under whose subsequent decree and sale the defendant claimed title. It is a significant fact, in that case, that, at the time of the appointment of the receiver by the State court, the executions upon the judgments had been issued and levied, and were a subsisting lien upon the premises. It was said in that case by Mr. Justice Nelson, delivering the opinion of the court: "It has been argued that a sale of the premises on execution, and purchase, occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale, therefore, in such a case should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court to abide the event of the litigation, and to be applied to the payment of the judgment creditor who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made. And, in order to effect this, the court must administer it independently of any rights acquired by third persons pending the litigation. Otherwise the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless." And the conclusion was: "It is sufficient to say that the sale under the judgment, pending the equity suit, and while the court was in possession of the estate, without the leave of the court, was illegal and void."

And the same conclusion must prevail here, for although the sale under the judgments in the State court was not made until after the property had passed from the possession of the District Court by delivery to the purchaser at the sale under the decree, yet, the initial step on which the sheriff's sale depended —the commencement of the proceedings to enforce the mechanic's lien, asserting the jurisdiction and control of the State

court over the property sold—took place when that property was in the exclusive custody and control of the District Court: and, by reason of its prosecution to a sale, was an invasion of the jurisdiction of that court. No stress is laid on the fact, that notice of the proceeding, by affixing a copy of the summons upon the building, which was required by the statute, could only be made by an actual entry by the sheriff upon the property, to that extent disturbing the possession of the marshal, because the same result, in our opinion, would have followed, if no such notice had been required or given. The substantial violation of the jurisdiction of the District Court consisted, in the control over the property in its possession, assumed and asserted, in commencing the proceedings to enforce against it the lien claimed by the plaintiffs in those actions, prosecuting them to judgment and consummating them by a sale. The principle applied in *Wiswall* v. *Sampson, ubi supra,* must be regarded as firmly established in the decisions of this court. It has been often approved and confirmed. *Peale* v. *Phipps,* 14 How. 368; *Hagan* v. *Lucas,* 10 Pet. 400; *Williams* v. *Benedict,* 8 How. 107; *Pulliam* v. *Osborne,* 17 How. 471; *Taylor* v. *Carryl,* 20 How. 583; *Yonley* v. *Lavender,* 21 Wall. 276; *People's Bank* v. *Calhoun,* 102 U. S. 256; *Barton* v. *Barbour,* 104 U. S. 126; *Covell* v. *Heyman,* 111 U. S. 176.

But it is to be understood, as a qualification of what has been said, that we do not mean to decide that the plaintiffs in the actions in the State court might not, without prejudice to the jurisdiction of the District Court, commence their actions, so far as that was a step required by the mechanics' lien law of New Jersey, for the mere purpose of fixing and preserving their rights to a lien, provided, always, they did not prosecute their actions to a sale and disposition of the property, which, by relation, would have the effect of avoiding the jurisdiction of the District Court under its seizure. That was the course, under similar circumstances, adopted and sanctioned by the Supreme Judicial Court of Massachusetts in *Clifton* v. *Foster,* 103 Mass. 233, where a petition to enforce a mechanic's lien, which, by statute, it was necessary to file within a fixed time in order to

preserve it, was permitted to be filed after the property, by the bankruptcy of the owner, had passed into the custody of the District Court, but all further proceedings thereon were stayed to await the action of that court in the bankruptcy proceedings, on the ground that such seasonable filing was necessary to keep the lien alive, and that, without further proceedings it could not be construed as an encroachment upon the jurisdiction of the bankruptcy court. The distinction seems to us reasonable and just, and is supported by the decisions in *Williams* v. *Benedict*, 8 How. 107, and *Yonley* v. *Lavender*, 21 Wall. 276. In conformity with it, we refrain from pronouncing the proceeding in the State court of New Jersey invalid, so far as they do not affect the legal title of the purchaser at the marshal's sale to the premises in controversy. We decide, not that they are invalid for the purpose of declaring and establishing the lien, but that they are not good for the purpose of enforcing it, as was attempted, by a sale and conveyance of the premises in controversy.

This view, though decisive of the case and resulting in the affirmance of the judgment of the Circuit Court, proceeds upon assumptions the most favorable which can be indulged to the plaintiff in error. It is merely an application of the familiar and necessary rule, so often applied, which governs the relation of courts of concurrent jurisdiction, where, as is the case here, it concerns those of a State and of the United States, constituted by the authority of distinct governments, though exercising jurisdiction over the same territory. That rule has no reference to the supremacy of one tribunal over the other, nor to the superiority in rank of the respective claims, in behalf of which the conflicting jurisdictions are invoked. It simply requires, as a matter of necessity, and, therefore, of comity, that when the object of the action requires the control and dominion of the property involved in the litigation; that court which first acquires possession, or that dominion which is equivalent, draws to itself the exclusive right to dispose of it, for the purposes of its jurisdiction. It was in accordance with this principle that in *Pulliam* v. *Osborne*, 17 How. 471, this court confirmed the legal title of land to a purchaser under an execution upon a judg-

ment rendered in a State court, because first actually levied as against one claiming under an execution out of the District Court of the United States, which had a priority of lien by reason of having been first issued.

We, therefore, now determine that the plaintiff in error does not hold the legal title of the premises in controversy, as against the defendant in error, claiming under the marshal's sale and the decree of the District Court; and we decide nothing beyond that. The other questions, argued at the bar—whether the forfeiture decreed by the District Court operated to transfer the whole title of the premises against all claimants; whether, if it operated only upon the interest of the owner at the time the alleged offences were committed, subject to all valid liens then existing, nevertheless, those liens were transferred to the proceeds of the sale, and the claimants were bound at their peril to intervene in their own behalf in that proceeding; or, whether the sale, as made, passed the legal title, subject to all existing liens, including those sought ineffectually to be enforced by the proceedings under which the plaintiff in error claims; and whether, in that event, these may be enforced against the land or present owners, and if so, in what mode—we have passed by without considering, as not necessary to the decision of the case.

*The judgment of the Circuit Court is affirmed.*