**ARMOUR & CO. v. MILLER, Judge.**
No. 402.

Circuit Court of Appeals, Eighth Circuit.
July 22, 1937.

Howard G. Fuller, of Fargo, N. D. (Fuller & Powers, of Fargo, N. D., and Walter C. Kirk, of Chicago, Ill., on the brief) for petitioner.

E. T. Conmy, of Fargo, N. D., for respondent.

Before WOODROUGH, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

This is an original petition for the writ of mandamus to require the Honorable Andrew Miller, as judge of the District Court of the United States for the District of North Dakota, herein called respondent, to retain and exercise jurisdiction over certain parties and subject-matter for the determination of all damages sustained by such parties and all of the parties plaintiff, in a certain action for an injunction and all further relief, now pending in the court of which respondent is the duly appointed, qualified, and acting judge; that he vacate a part of his interlocutory decree in such action in which he declined to retain jurisdiction for the assessment of damages; that on the record, or on proper application, he restrain those plaintiffs over whom he declined to retain jurisdiction, from the further prosecution of numerous certain actions for damages, now pending in a state court, and "for further relief."

The respondent filed a full and lengthy return; thereupon petitioner filed a motion for judgment on the pleadings, and on this motion the case came on for hearing before this court.

In this situation, we are of the view that the return of the respondent imports verity, and while such return denies one or two unimportant allegations of the petition for the writ of mandamus, we must assume that such denied allegations are untrue.

The facts are entangled and confusing and not the less so because there are numerous references to the many plaintiffs and groups thereof in the state court cases, and in the federal court case of John Storley v. Armour & Co., and in the briefs here and in the petition for the writ, as the "32", the "44", the "12", the "16", and the "38." No doubt, the adoption of this small-arms ordinance nomenclature saved much labor to counsel, who thus avoided setting out names and groups, but we have found it confusing, so that it has been well-nigh impossible for us to check accurately the facts in the case.

But these facts seem to run fairly thus: In 1934 and for a number of years prior thereto, petitioner, Armour & Co., owned and operated stockyards and a packing plant, whereat daily they slaughtered and prepared for market some 2,000 head of live stock. This plant was located on the Sheyenne river, at a point at or near West Fargo, in Cass county, N. D., and upstream from the farms of each of the many plaintiffs in the injunction suits next below mentioned.

On or about July 6, 1934, one John Storley, as plaintiff and 31 others, who were farmers, owning, occupying, and operating farms on and abutting on, the Sheyenne river, each began separate actions in the state district court of Cass county to enjoin Armour & Co., from polluting the waters of Sheyenne river by discharging therein offensive offal and effluent from its packing plant and stockyards, and for damages. All of these 32 actions were removed by Armour & Co., defendant therein, to the District Court of the United States, for the District of North Dakota, then and now presided over by respondent.

On December 24, each of the 32 plaintiffs, except John Storley, asked and was permitted to amend his respective complaint, so as to eliminate all reference to and prayer for equitable relief; thus leaving the actions to stand for damages only. All of these actions wherein the damages claimed did not exceed $3,000 were remanded to the state court. Those wherein the alleged damages exceeded $3,000 were transferred to the law side of the docket (again except Storley, below especially referred to). Against these amendments, and the remanding of the cases, counsel for

Armour & Co. objected, but saved no exceptions.

Thereafter, each and all of these 32 cases, except the Storley case, were on February 11, 1935, compromised and settled by the payment of all damages accrued up to January 1, 1936. This compromise settlement was by stipulation, which provided, in effect, that on or after November 1, 1935, any of the 31 plaintiffs, if the nuisance had not earlier been abated by Armour & Co., could ask for a setting and trial of the Storley case (an alleged class action, wherein the damages claimed were $3,500). Thereupon, all of the cases, except that of Storley, were dismissed in the federal court and in the state court, respectively; leaving of the entire 32, only the case of Storley pending. In the latter case a special stipulation was filed, wherein it was agreed that that case should be continued till November 1, 1935, and in the meantime, Armour & Co. should install "facilities for primary treatment by screening and settling of packing house waste." If, however, on or after November 1, 1935, Storley should still deem unlawful pollution of Sheyenne river to exist, he was privileged to bring the case of Storley v. Armour & Co. on for trial on the bill as filed by him, save that "all damages accruing to Storley up to January 1, 1936," were compromised, paid, and eliminated from the complaint.

In October, 1936, counsel for Storley (who was also counsel for the 31 other plaintiffs, whose individual actions for damages and injunctions had been dismissed after amendment, so as to pray for damages only) moved the federal District Court to set the Storley case down for trial. It was accordingly set for trial for December 8, 1936. At the beginning of the trial some 44 farmers with like alleged damages and grievances were by stipulation made plaintiffs in the case of Storley v. Armour & Co. These included those (and among them the 16 whose names are set out below) who had theretofore sued, settled, and dismissed their suits, and others who seemingly had not then brought suits in any court. The names of those (16 in all), who had in October and November, 1936, each brought, and then had pending in the state district court for Cass county, actions at law against Armour & Co. for damages accruing since January 1, 1936, were:

E. A. Ecklund, H. L. Ecklund, Edwin Waa, and Theodore Waa, individually and as Waa Bros., Carl Rudolph Landblom, Herman Rust, Roy Landblom, Arthur Waa, L. Oquist, Helmer Paulson, Gust A. Johnson, Alfred Selstedt, Mrs. Ida Ostrom, administratrix of the estate of G. H. Ostrom, Charles A. Hyde, Mary Hyde Bell, and Nellie Hyde Chapman. Each of these plaintiffs claimed damages in the sum of $1,800 only, except the last three above-named, who sued jointly for $3,000.

Each of the above-named persons were among those, who pursuant to stipulations, had voluntarily had themselves made parties to the suit of Storley v. Armour & Co. at the beginning of the trial thereof, but after they had filed suits for damages in the state court. It is not presently seen to be important, but for the sake of accuracy it may be said that the last three of the above-named persons brought their joint action for damages in the state court after the Storley suit was tried, but before the rendition of the interlocutory decree therein, whereof petitioner complains in the action at bar.

Armour & Co. came into the state court and filed answers in each of 13 damage suits. These answers were general denials and were filed as counsel for Armour & Co. urge, in effect, to prevent the taking of judgments by default. Counsel for respondent says that the status quo could have been maintained by filing a demurrer, under the statute of North Dakota. Be the law on the latter point as may be, we do not think it has any decisive bearing in this case.

Thereafter, and in January, 1937, the respondent made and filed findings of fact and conclusions of law and entered what is called in the record an interlocutory decree in the case of Storley v. Armour & Co., to the effect that though a continuing nuisance as to the plaintiffs in that case existed, he would defer the entry of a final decree permanently enjoining Armour & Co. for one year to the end that the latter might be enabled in the meantime to find and install some method or device by which to abate the existing nuisance. Respondent, to permit this installation to be accomplished, retained jurisdiction of the case for the assessment of damages down to the date of the final decree, "in such wise as may be consistent with the practice and procedure in equity," as to John Storley and all those who had been made plaintiffs in the case, except as to the 16 persons whose names we have set out

above, and who then had 13 individual damage suits pending in the state court. As to such 16, he decided that comity existing between the state court and the federal District Court conferred power on him to use his discretion as to whether he' should retain them as plaintiffs in the Storley suit and therein assess their damages, or permit their damages to be assessed by the state court, wherein as said already they had sued in October and November, 1936, and January, 1937, respectively. So respondent declined to retain jurisdiction over them as to the matter of damages relegating that matter to the state court, out of deference to comity, which in his opinion vested in him a discretion so to do. Hence this case.

Petitioner herein insists that the court of respondent acquired jurisdiction over all plaintiffs in the equity suit prior to the beginning by the 16 named above of their actions for damages in the state court, and so it was the duty of respondent to retain that jurisdiction and assess their damages up to the date of the final decree therein, and so, therefore, abdication of such jurisdiction was as to such 16 unlawful and can be controlled by this court by the writ of mandamus.

As set forth by us early in the statement of facts, we are asked to issue the writ of mandamus commanding the repair, so to speak, of three alleged legal derelictions, to wit, that (a) respondent retain jurisdiction in his court and in the Storley case over Ecklund and the 15 others, who have pending actions in the state court for damages; (b) that respondent vacate so much and that part of the interlocutory decree, wherein he declined to retain such jurisdiction; and (c) that respondent restrain Ecklund and the 15 others, who have actions for damages pending in the state court, from the further prosecutions of such actions.

■ It seems fairly clear that if the relief asked in proposition (a), supra, shall be afforded, then since there has not as yet been entered any final decree of injunction (and none may ever be entered; see Harrisonville v. Dickey Clay Co., 289 U. S. 334, 53 S.Ct. 602, 77 L.Ed. 1208) no occasion exists to consider proposition (b), supra. If jurisdiction over the 16 is ordered to be and is retained, the matter will automatically work itself out in the final decree.

In proposition (c), supra, the situation is that the respondent has never been requested in any formal ancillary bill or cross-bill to restrain those who are suing in the state court for damages. True, the respondent in his return quotes' the interlocutory decree, which apposite to nothing and no pleading found in the record says this:

"This court will not undertake the determination or assessment of damages sustained prior to the date of this decree by those plaintiffs who now have actions pending untried in said court nor restrain said plaintiffs from the prosecution of such actions."

■■ So far as this quoted excerpt shows anything, it shows that respondent has passed on the matter of an injunction and denied it; but the record also shows that he acted on it, to the extent above indicated, when it was not before him in such formal wise as to confer jurisdiction on him. If he has already passed on it, nothing is better settled than that mandamus will not lie to compel him to decide it differently; mandamus in a proper case does not dictate any named decision, or designate the color of action to be taken; it merely requires action in case of nonaction. So, for this reason, and because the record is silent otherwise on the point and because no proper application has ever been made for an injunction or restraining order and for an additional reason below discussed, it deserves no further notice here, so far as concerns the power of this court to compel by mandamus action on it by respondent. We think, no doubt can exist, that before respondent could acquire jurisdiction to pass on the matter of whether or not he would restrain the prosecution of pending actions in the state court it was necessary that an ancillary complaint or cross-complant should have been filed and the matter heard formally and a decree entered; if all this was in fact done, the record does not show it; indeed, it would have no place in this record, since an appeal and not mandamus in such situation would constitute the remedy.

■ It may, we think, be conceded that when a federal court has antecedently acquired jurisdiction over a cause of action either in rem or in personam, and is exercising that jurisdiction, it may not abdicate such jurisdiction and refuse to proceed further because of the pendency of an action in a state court involving the same

subject-matter, and that if it does so, mandamus will lie to compel it to proceed notwithstanding the action in the state court. McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762; Chicot County v. Sherwood, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546; Travelers' Protective Ass'n v. Smith (C.C.A.) 71 F.(2d) 511; Woolf v. Reeves (C.C.A.) 65 F.(2d) 80, 81; Frankel v. Woodrough (C.C.A.) 7 F.(2d) 796. In such situation we think no question of comity arises. Here the 16 plaintiffs, as nearly as we can gather from a peculiarly dark and difficult record, each originally came by separate suits into a state chancery court and prayed for an injunction and for damages.· In the federal court, or in the state court, they dismissed all of these original actions, but reserved the right, in effect, to reinstate them, by becoming parties to the yet pending case of Storley v. Armour & Co., which was an action for an injunction and all further relief. When the Storley case was finally set for trial, they voluntarily made themselves parties thereto; thus we think by the strongest implication waiving the right to a jury trial on the matter of damages. Smith Engineering Co. v. Pray (C.C.A.) 61 F.(2d) 687; Sklarsky v. Great Atlantic, etc., Co. (D.C.) 47 F.(2d) 662, 665; Di Menna v. Cooper & Evans Co., 220 N.Y. 391, 396, 115 N.E. 993. It is, of course, well settled that a court of equity having acquired jurisdiction of the subject-matter of a suit will retain such jurisdiction for all purposes, and adjudicate all disputed rights of the parties arising out of such subject-matter, and this too, notwithstanding some of such rights may sound at law [Rice & Adams Corp. v. Lathrop, 278 U.S. 509, 49 S.Ct. 220, 73 L.Ed. 480; Smith Engineering Co. v. Pray, supra; Zenith Carburetor Co. v. Stromberg etc. Co. (C.C.A.) 270 F. 421; The Salton Sea Cases (C.C.A.) 172 F. 792; Maytag Co. v. Meadows Mfg. Co. (C.C.A.) 45 F.(2d) 299; rule 23 Rules in Equity, 28 U.S.C.A. following section 723]; indeed it is its duty to do so, and "not remit any part of [the controversy] to a court of law" [Connecticut Fire Ins. Co. v. McNeil (C.C.A.) 35 F. (2d) 675, 676; McGowan v. Parish, 237 U. S. 285, 35 S.Ct. 543, 59 L.Ed. 955; Greene v. Louisville & I. R. Co., 244 U.S. 499, 520, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas. 1917E, 88; Camp v. Boyd, 229 U.S. 530, 552, 33 S.Ct. 785, 57 L.Ed. 1317]. And in cases such as the suit of Storley, damages may be adjudged down to the date of the trial. City of Harrisonville v. Dickey Mfg. Co. (C.C.A.) 61 F.(2d) 210, 213. In fact, upon weighing the respective hurts which the granting of a permanent injunction would work upon Armour & Co., and upon the several plaintiffs respectively, it would seem and has been ruled that respondent has the power to deny destruction of petitioner's business through a decree of permanent injunction, on condition of ample and final compensation to the several plaintiffs in a lump sum. Harrisonville v. Dickey Clay Mfg. Co., 289 U.S. 334, 53 S.Ct. 602, 77 L.Ed. 1208.

■ It is, of course, fairly well settled that the writ of mandamus should never issue if any other remedy exists which is fully adequate. 18 R.C.L. 131, 132; 26 Cyc. 171. It has been doubted seriously whether the existence of an adequate equitable remedy will preclude the issuance of the writ (26 Cyc. 172); but clearly the existence of an equitable remedy is to be considered as an element in the discretion which a court may always exercise touching the issuance of the writ (see Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L. Ed. 1020; 26 Cyc. 172).

■ The Baldwin Case, supra, makes it fairly clear that if this were a bankruptcy matter, or even a case wherein the res was in custodia legis and jurisdiction over it had, as to the federal court been, as against the state court, antecedently acquired, injunction would lie against the plaintiffs in the state court cases to enjoin further prosecution of their several actions. But here there is no res involved in the federal court, and no property in custodia legis; the latter court merely has jurisdiction of a controversy, namely, an action for an injunction. Such an action argues no lien, and comprehends no res which may be affected by any action in a state court. An injunction suit is an action in personam and operates against persons and not property. 14 R.C.L. 307. The several actions now pending in the state court and being prosecuted by the 16 persons herein sought to be retained in the court of respondent are actions also in personam, namely, suits at law for damages to be paid in money. The great weight of authority warrants the view that it is the duty of a federal District Court to retain jurisdiction of, and to decide a case pending before it, notwithstanding the pendency of an action in personam in a state court which involves the same

subject-matter. Boynton v. Moffat Tunnel Imp. Dist. (C.C.A.) 57 F.(2d) 772, 778; Krauss Bros. Lumber Co. v. Louis Bossert & Sons (C.C.A.) 62 F.(2d) 1004, 1006; Jensen v. New York Life Ins. Co. (C.C.A.) 59 F.(2d) 957; Rogers v. Paving Dist. (C.C.A.) 84 F.(2d) 555, 558; McClellan v. Carland, supra; Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077.

■ In such a situation, the case of Kline v. Burke Construction Co., supra, as we read it, holds that an action to enjoin further prosecution by the plaintiffs in the state court cases would not lie in favor of Armour & Co., because there was no custody of property in the federal court to be protected by the injunctive process. See Stewart Land Co. v. Arthur (C.C.A.) 267 F. 184. In the case of Kline v. Burke Construction Co., supra, the Supreme Court quoted with seeming approval what was said in Baltimore & Ohio R. Co. v. Wabash R. Co. (C.C.A.) 119 F. 678, 680, thus:

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. * * * The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves, nothing to discretion or mere convenience.' Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. Farmers' Loan & Trust Co. v. Lake Street El. R. Co. [177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667]; Merritt v. Steel-Barge Co., 24 C.C.A. 530, 79 F. 228, 49 U.S.App. 85. The rule is limited to actions which deal either actually or potentially with specific property or objects. Where a suit is strictly in personam, in which nothing more than a personal judgment is sought, there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined; and this because it neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with law. Stanton v. Embrey, 93 U.S. 548 [23 L.Ed. 983]."

Upon another phase apposite here, the Supreme Court said in the Kline Case, supra, 260 U.S. 226, at page 235, 43 S.Ct. 79, 83, 67 L.Ed. 226, 24 A.L.R. 1077, this:

"The well-established rule, to which we have referred, that where the action is one in rem that court—whether state or federal —which first acquires jurisdiction draws to itself the exclusive authority to control and dispose of the res, involves the conclusion that the rights of the litigants to invoke the jurisdiction of the respective courts are of equal rank. See Heidritter v. Elizabeth Oil Cloth Co., 112 U.S. 294, 305, 5 S.Ct. 135, 28 L.Ed. 729. The rank and authority of the courts are equal, but both courts cannot possess or control the same thing at the same time, and any attempt to do so would result in unseemly conflict. The rule, therefore, that the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction is a rule of right and of law based upon necessity, and where the necessity, actual or potential, does not exist the rule does not apply. Since that necessity does exist in actions in rem and does not exist in actions in personam, involving a question of personal liability only, the rule applies in the former but does not apply in the latter."

Thereupon, the Supreme Court refused in the Kline Case to uphold the issuance of an injunction to enjoin an action in personam in a state court, which had been ordered by the Court of Appeals of this Circuit.

■ It was held by the Supreme Court, in the case of Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020, that mandamus to compel a federal District Court to assume jurisdiction in a certain action arising out of a railroad reorganization proceeding should be denied, because any interference with the jurisdiction of the bankruptcy court could be prevented by an injunction. See, also, Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. But obviously the above two cases have no application in a case

wherein no property is in the custody of the federal court, as clearly pointed out by the quotation last above from the Kline Case, supra. If, as we think, an injunction will not lie to restrain the 16 plaintiffs in the Storley case from further prosecution of their actions for damages pending in the state court, we know of no adequate remedy either in equity or law save mandamus by which petitioner may protect the jurisdiction of the federal court in a case which has been tried to the stage of an interlocutory decree. True, it is that the plaintiff in an action in equity or at law has ordinarily the right to dismiss or discontinue his case, at least at any time prior to submission, in the absence of any counterclaim on defendant's part. And so it follows that a defendant should ordinarily not be heard to complain that a plaintiff has abandoned or dismissed his demand or any part of his demand. But the rule as to the right to a dismissal or discontinuance of the jurisdiction does not rest alone with a plaintiff, the defendant also has or may have acquired by the situation some rights in the premises. So, the general rule is thus stated in 14 Cyc. 406:

"While a plaintiff may dismiss any claim where such dismissal will not prejudicially affect the interests of defendant, he will not be permitted to dismiss, to discontinue, or to take a nonsuit, when by so doing he will obtain an advantage and defendant will be prejudiced or oppressed, or deprived of any just defense."

The point above is mentioned only as analogous, because the plaintiff ordinarily is the party who is interested in preserving jurisdiction, and because in McClellan v. Carland, supra, mandamus issued on the petition of a plaintiff. Here, the case had been tried and findings of fact and conclusions of law had been made by the respondent. Some of these, petitioner urges, were favorable to it, and it deserves and is entitled to retain the advantage of them not only as to such plaintiffs as were retained in the Storley case, but as to those who were by respondent relegated to the state court for the assessment of their damages. So, it seems to us that petitioner, though defendant in the case of Storley, would be put at a disadvantage, if jurisdiction be abdicated, for that in such case it would be deprived as to the 16 of any reliance on the court's findings of fact and conclusions of law and of a possible assessment of a final lump sum as damages in their several favors, in lieu of a permanent injunction, Harrisonville v. Dickey Clay Co., supra, and, therefore, petitioner, though defendant in the case, is entitled to urge the retention by respondent of jurisdiction. We see no reason why in such situation a defendant may not urge that mandamus issue.

Since, in principle, we are not able to distinguish the case at bar from the case of McClellan v. Carland, supra, we feel constrained by that case to hold it to be the duty of respondent to retain in the Storley case the cases of Ecklund and others above named, and to exercise the same jurisdiction over them as to the assessment of damages in the lump sum in lieu of a permanent injunction or otherwise as he shall over all other plaintiffs therein, and to that end petitioner is entitled to have the writ of mandamus for which it prays. We feel sure, however, that we need not presently issue the definitive writ therefor, and so issue thereof will be deferred till such time as petitioner shall be advised to file a motion therefor. Mandamus granted without costs to either party, issue of writ to await the further order of this court.

THOMAS, Circuit Judge (dissenting).

I cannot agree that this is a proper case for this court to interfere with the discretion of the respondent District Court by writ of mandamus. Application of well-established principles seems to me to dictate an opposite course.

It is clear upon the authority of Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 83, 67 L.Ed. 226, 24 A.L.R. 1077, that it is "the duty of the state court to take the case(s) and proceed to judgment." Assuming, as we must, that the state court will perform that duty the petitioner's purpose in asking the writ is thwarted completely. The end sought to be accomplished by the petition for the writ was to require the respondent to, "on the record, or proper application, restrain said plaintiffs from further prosecution of said actions at law during the pendency of said Storley suit in the United States District Court, * * *" and to the further end that respondent should determine such damages in the equity suit. The peculiarity of the situation is that petitioner seeks this relief in order to "be relieved from a vexatious and expensive multiplicity of actions" and "in avoidance of a multiplicity of suits." No complaint is made of that part of the interlocutory decree which denies

an injunction in the Storley case for a period of one year, and, under the circumstances there provided, for a longer time. During the interval, no reason appears why all the damage cases now pending in the state court, and as many others as may be brought, may not proceed to final judgment. Therefore, the writ, as prayed for and granted, affords no relief from the alleged "multiplicity of actions" and points to no remedy. It is the general rule that a court will not exercise its discretion in granting mandamus to compel an act which is futile and affords no real relief. United States v. Nordbye (C.C.A.8) 75 F.(2d) 744, 746; City of Boulder v. Lewis (C.C.A. 8) 21 F.(2d) 910, 912.

In addition to the foregoing considerations, which in my opinion should influence our decision, the writ should be denied on the ground that mandamus will not lie in behalf of a party who has other adequate remedies. Ex parte Cutting, 94 U.S. 14, 20, 24 L.Ed. 49; Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 555, 78 L.Ed. 1020; Calf Leather Tanners' Ass'n v. Morgenthau, 65 App.D.C. 93, 80 F.(2d) 536, 542, certiorari denied, 297 U.S. 718, 56 S.Ct. 595, 80 L.Ed. 1003; Hineline v. Molyneaux (C.C.A.8) 73 F.(2d) 925; United States ex rel. Girard Trust Company v. Helvering, 57 S.Ct. 855, 81 L.Ed. ——, decided May 24, 1937. If petitioner's contentions in the District Court and here are sound, it has a complete remedy for relief from "a vexatious and expensive multiplicity of actions" by injunction. "Avoidance of the burden of numerous suits at law between the same or different parties, where the issues are substantially the same, is a recognized ground for equitable relief in the federal courts. See Ogden City v. Armstrong, 168 U.S. 224, 18 S.Ct. 98, 42 L.Ed. 444; Hale v. Allinson, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380." Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 70, 56 S.Ct. 1, 4, 80 L.Ed. 47. The fact that the suits sought to be enjoined are pending in the state, rather than in the federal court, does not alter the situation. Woodmen of the World v. O'Neill, 266 U.S. 292, 298, 45 S.Ct. 49, 51, 69 L.Ed. 293; Jamerson v. Alliance Ins. Co. of Philadelphia (C.C.A.7) 87 F.(2d) 253; Alliance Ins. Co. of Philadelphia v. Jamerson (D.C.) 12 F.Supp. 957. The case of Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, is relied upon as establishing the proposition that injunction will not lie to restrain the plaintiffs in such

a case as this because, as stated in the majority opinion supra, "there is no res involved in the federal court, and no property in custodia legis; the latter court merely has jurisdiction of a controversy, namely, an action for injunction." See majority opinion p. 525. The decision in the Kline Case is based upon section 265 of the Judicial Code (28 U.S.C. A. § 379) which provides in part that, "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State." The narrow question there decided was that the pendency of two or more personal actions between the same parties upon the same cause of action in the state and federal court does not give the federal court power to enjoin prosecution in the state court as distinguished from the situation where a res had previously come within the jurisdiction of the federal court and process was necessary for its protection. But where a well-recognized ground of equitable jurisdiction exists, section 265, upon which the Kline decision is based, has never been considered as depriving the federal court of power to enjoin parties from prosecuting in personam actions in the state court, although there is no res in custody of the federal court. Thus parties prosecuting in the state court may be enjoined on the ground that the complainant is being subjected to a multiplicity of actions. Woodmen of the World v. O'Neill, supra; Jamerson v. Alliance Ins. Co. of Philadelphia, supra; First State Bank v. Chicago, R. I. & P. R. Co. (C.C.A.8) 63 F.(2d) 585, 90 A.L.R. 544; cf. St. Louis, I. Mt. & So. Ry. Co. v. McKnight, 244 U.S 368, 369, 375, 37 S.Ct. 611, 61 L.Ed. 1200. Likewise a federal court may enjoin one from seeking the benefits of a state judgment fraudulently obtained, Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870; Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492, although it is clear that the "proceedings" are still continuing in the state court. Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 282, 80 L.Ed. 293. It is equally well settled that the federal court, after an action has been removed to it, may grant an injunction against further proceedings in a state court prior to judgment. Roach v. First Nat. Bank of Memphis (C.C.A.5) 84 F.(2d) 969; Cray, McFawn & Co. v. Hegarty, Conroy & Co. (C.C.A.2) 85 F.(2d) 516; Dillinger v. Chicago, B. &. Q. R. Co. (C.C.A.8) 19 F.(2d) 196; Kolkin v. Gotham Sportswear (D.C.

N.Y.) 10 F.Supp. 682. In none of these instances was a res in custody of the federal court; its jurisdiction extended only over a controversy. But federal courts have always issued injunction against parties prosecuting actions in the state courts where a ground of equitable jurisdiction existed. Such instances have been designated as "recognized exception to section 265 of the Judicial Code." Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 312, 73 L.Ed. 669. In Woodmen of the World v. O'Neill, supra (decided subsequent to the Kline Case), the court pointed out that:

"The jurisdiction thus acquired was not taken away by Section 265 of the Judicial Code. * * * This section does not deprive a district court of the jurisdiction otherwise conferred by the federal statutes, but merely goes to the question of equity in the particular bill; making it the duty of the court, in the exercise of its jurisdiction, to determine whether the specific case presented is one in which relief by injunction is prohibited by this section or may nevertheless be granted. Smith v. Apple, supra [264 U.S. 274] p. 278, 44 S.Ct. 311 [68 L.Ed. 678]."

In the Kline Case, supra, no claim was made that a recognized equitable ground for jurisdiction existed and therefore the court did not consider the question. But such omission in the discussion does not deny the existence of the rule. Expressions "in every opinion, are to be taken in connection with the case in which those expressions are used." Cohens v. Virginia, 6 Wheat. 264, 399, 5 L.Ed. 257. A different question is presented where as here complaint is made of a multiplicity of actions.

But, whether on proper application on its part, the petitioner could get an injunction such as that issued in Montgomery Light & Water Power Co. v. Charles (D. C.Ala.) 258 F. 723, in view of the principles recently laid down in Di Giovanni v. Camden Fire Ins. Ass'n, supra, should not here be determined. It is sufficient that if relief is sought from a multiplicity of actions, injunction, and not mandamus is the appropriate remedy. In Ex parte Baldwin, supra, the petitioners sought mandamus commanding the federal district court to take jurisdiction on a petition for removal of a suit instituted in a state court on the grounds that the trustees in bankruptcy were entitled to have the controversy adjudicated in the federal court. The court denied the petition, not on the ground that the petitioners were not so entitled, but for the reason that if relief were merited, it could be obtained by injunction. The court there said, "Nor need we consider whether the federal court, if it had entertained a petition for removal, would have been obliged to dismiss the suit on the ground that the state court was without jurisdiction because the bankruptcy court had possession of the res. * * * It is sufficient that the extraordinary remedy of mandamus should be denied, because the trustees may by the common remedy of injunction prevent any interference with the jurisdiction of the bankruptcy court. * * * Moreover, the bankruptcy court might, in the exercise of its discretion, conclude that it is desirable to have the litigation proceed in the state court."

The application of these principles to the case at bar should prevent the issuance of mandamus without regard to whether injunction might issue if proper application were made, because the injury complained of here is of a type cognizable in equity. It is also immaterial to what extent the petitioner may have waived any possible right of injunction by filing answers in the cases pending in the state court. The fact remains that injunction is the appropriate remedy and that mandamus will not issue to extricate a party from a position in which he has voluntarily placed himself. Voluntary waiver of a procedural remedy certainly will not confer another remedy which is designed to accomplish the same end. The petitioner should be on its guard to use the appropriate remedy when the occasion arises.

The opinion apparently is based upon the further supporting proposition that the petitioner, unless the writ is granted, will be deprived of the benefits of the findings of fact and conclusions of law made by the court in connection with the interlocutory decree. This does not seem to me to aid petitioner here nor to enlarge the jurisdiction of this court nor to furnish any basis for mandamus. If petitioner has acquired any rights under the interlocutory decree, it may plead such rights in the actions in the state court, and the federal courts will see that such rights are protected in the event the state court refuses to enforce them. In Missouri v. Fiske, 290

U.S. 18, 29, 54 S.Ct. 18, 22, 78 L.Ed. 145, the Supreme Court said:

"But, if the decree of the federal court can be considered as determining the ownership of the shares so as to bind the state in later tax proceedings upon the death of the life tenant, and there is a federal right to have that effect given to the decree, that federal right can be specially set up and claimed in the proceeding in the state court, and, if the right is finally denied, the decision may be the subject of review by this Court in case the appropriate procedure is followed." See, also, Dugas v. American Surety Co., 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720.

So, it appears to me the petitioner has other available remedies and that mandamus for that reason is not appropriate.

Further, mandamus will not lie to control the discretion of the court. Lansdown v. Faris (C.C.A.8) 66 F.(2d) 939, 940. Appeal is the remedy for review of discretionary rulings and orders. Petitioner seeks to substitute mandamus for appeal on the ground that appeal will not be available until the final decree is entered, and that in the meantime the cases in the state court may go to final judgment. The majority opinion seems to sustain this contention. To me there are two complete answers: (1) If the petitioner will sustain irreparable injury by the proceedings in the state court, then this is a distinct ground for equitable relief by way of injunction; (2) the fact that appeal must await a final decree is not now a ground, and never was a ground, for review by mandamus. The fact that the appropriate remedy may occasion delay constitutes no basis for the issuance of the writ. Re Connecticut Mut. L. Ins. Co., 131 U.S. clxxx Append., and 26 L.Ed. 561. If decision is to be based upon a race of diligence only, then the result reached in the opinion should stimulate the plaintiffs in the actions in the state courts. The petitioner, under the decision in the Kline Case, is in no position to complain if the state court proceedings reach final judgment before that in the federal court.

This case is thus distinguished from Mc-Clellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762, because the petitioner there was seeking to enforce a right, unenforceable by any other remedy. The petitioner in that case was a plaintiff who was insisting that the federal court hear his claim. In reference to such a situation the court in the Kline Case said: "It [the federal court] could not abdicate its authority or duty in favor of the state jurisdiction." But this is a case where a defendant in a suit to enjoin a nuisance seeks mandamus to compel the court to determine the extent of its liability for damages where the only foundation for such demand consists of requests for findings of fact and conclusions of law. It must be borne in mind that an action to enjoin a wrong is not the same cause of action as one at law for damages arising from its accomplishment. Kelliher v. Stone & Webster (C.C.A.5) 75 F.(2d) 331, 333; City of New York v. Pine, 185 U.S. 93, 107, 22 S.Ct. 592, 46 L.Ed. 820. For that reason a failure to obtain an injunction may not be a bar to a later action at law to recover damages. Kelliher v. Stone & Webster, supra; City of New York v. Pine, supra. Had the court in this instance merely decided to act on the injunction of the plaintiff, the petitioner would have been in no position to ask that the respondent also determine the question of damages. The stipulation of settlement of February 11, 1935, provided: "It is specifically * * * agreed that the above settlement * * * for damages shall not be a bar or estoppel to prevent his (the plaintiff's) bringing the above case on for trial on the injunction feature after November 1st, 1935." Where the plaintiffs were not requesting the respondent to assess damages, he had the undoubted power in his discretion to refuse to assess damages at all. Braithwaite v Henneberry, 222 Ill. 50, 78 N.E. 34, 36; Deepwater R. Co. v. D. H. Motter & Co., 60 W.Va. 55, 53 S.E. 705, 706, 116 Am.St. Rep. 873. In Braithwaite v. Henneberry, supra, the court said:

"It is the rule that when a court of equity acquires jurisdiction over a cause requiring any equitable relief, the court may retain the cause for all purposes, and establish legal rights and provide legal remedies which would otherwise be beyond the scope of its authority. In such a case the court will not ordinarily limit itself to the execution of partial justice and turn the parties over to a court of law, but will go on and dispose of all the matter at issue so as to do adequate and complete justice between all the parties. Whether the court will so proceed to a final determination of legal rights is a matter for the exercise of sound discretion, which is subject to review, and which will ordinarily be exer-

cised by retaining the cause and granting any necessary legal remedies."

In the Deepwater Case, supra, it was said:

"The rule [allowing the granting of complete relief] is not infallible."

Because the federal court chose to assess damages in behalf of some of the plaintiffs, the petitioner obviously acquired no right to have the damages as to the other plaintiffs assessed also. The petitioner throughout its argument labors under the misapprehension that it has some sort of a right to have its personal liabilities determined in the federal court to the exclusion of the state court. The argument misconceives the applicable rule of law. "Indeed, since the case presented by that suit [the one in the state court] was such as to preclude its removal to the federal jurisdiction, the state jurisdiction in that particular suit was exclusive. It was, therefore, equally the duty of the state court to take the case and proceed to judgment. There can be no question of judicial supremacy, or of superiority of individual right." Kline v. Burke Construction Co., supra. The petitioner's case is not strengthened by an attempted analogy drawn from instances where the plaintiff is denied the right to dismiss his bill because of the resulting prejudice to the rights of the defendant. The line of demarcation is clear between the case that is here and the one supposed for illustration. Whether the plaintiff, upon proper application to the trial court, can dismiss his bill in accordance with well established rules set out in Ex parte Skinner & Eddy Corp., 265 U.S. 86, 93, 44 S.Ct. 446, 68 L.Ed. 912, depends upon prejudice "other than the mere prospect of future litigation rendered possible by the discontinuance." Pullman's Palace-Car Co. v. Central Transportation Co., 171 U.S. 138, 146, 18 S.Ct. 808, 811, 43 L.Ed. 108. But the petitioner in this case is fearful of nothing except that the claims for money damages will go to final judgment against it in the state court and not in the federal court. The removing of a cause to the federal court has never been considered as giving a defendant a right to have his liabilities determined in that court. New York Life Ins. Co. v. Driggs (C.C.A.4) 72 F.(2d) 833. It is a plaintiff who is asking a federal court to give him affirmative relief, McClellan v. Carland, supra, not a defendant who merely requests a declaration of law that his total liabilities be there determined, that can insist on the exercise of a federal jurisdiction once invoked.

In my opinion the writ should be denied on the grounds (1) that it is futile; (2) that if petitioner's grounds for a writ are sound its remedy is by injunction; and (3) that mandamus is not a substitute for appeal and should not be used to interfere with discretionary orders or rulings of a nisi prius court.